## MANIGOLD v. BLACK RIVER TRACTION CO.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. CARRIERS — INJURIES TO PASSENGERS—TRIAL—MISCONDUCT OF COUNSEL—
   REVERSIBLE ERROR.
      In an action for injuries to a passenger, after an objection had been sustained to a question asked of defendant's witness on cross-examination as to whom a doctor, who accompanied the witness on a visit to plaintiff, represented, plaintiff's counsel asked witness whether such doctor did not go to settle with plaintiff, and whether he was not representing an insurance company back of defendant, to which defendant's counsel at once objected, and which was not allowed to be answered. *Held*, that the asking of such question constituted reversible error, where it did not affirmatively appear that it did not affect the verdict, though the court instructed the jury that they should not regard it.

Appeal from Trial Term, Jefferson county.

Action by Julius Manigold against the Black River Traction Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Reversed.

The action was commenced on the 26th day of June, 1899, to recover damages for injuries sustained by the plaintiff on the 19th day of March, 1899, by being thrown from one of defendant's cars while riding therein as a passenger, alleged to have been caused through the negligence of the defendant.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and NASH, JJ.

Thomas Burns, for appellant.
John N. Carlisle, for respondent.

McLENNAN, J. The evidence adduced upon the trial was of such a character as to make the question of defendant's negligence and plaintiff's freedom from contributory negligence issues of fact for the determination of a jury. The extent of plaintiff's injuries was sharply litigated, and a large part of the evidence was directed to that question; the plaintiff claiming, in effect, that as a result of the accident he not only suffered severe and constant pain up to the time

of the trial, but that his injuries were of a permanent character, and that the pain and suffering would continue through life. On the other hand, the defendant contended that the plaintiff greatly magnified his injuries; that at the time of the trial he had substantially recovered from the effects thereof; and the defendant insists that the sum awarded to the plaintiff by the jury was grossly excessive, and much more than sufficient to fully compensate him for the injuries sustained.

From the evidence contained in the record before us we are not prepared to hold that the verdict of the jury is excessive, and for that reason to reverse or modify the judgment. It is not necessary to pass upon that question at this time. It is apparent, however, that the real extent and character of the plaintiff's injuries is a matter of such uncertainty as to require that the determination of that issue should not be prejudiced by improper evidence, or any procedure during the trial which might improperly affect the result.

This brings us to a consideration of the only exception which need be considered. A Mr. Smith, who at the time of the accident was defendant's superintendent, was called as a witness on behalf of the defendant. Upon his direct examination he stated that two or three days after the accident he called upon the plaintiff at his home, in company with a Dr. Rockwell, and that he requested the plaintiff, as soon as he was able, to come and see him (Smith), and that, perhaps, the matter could be adjusted; that the plaintiff promised he would, but failed to do so. On cross-examination Smith was asked by plaintiff's counsel:

"Q. Who is this Dr. Rockwell—the one that went down to see Manigold [the plaintiff]? Defendant's Counsel: Objected to as incompetent and immaterial. We asked him if he made a visit, and he said he went there with Dr. Rockwell. Plaintiff's Counsel: I want to know who Dr. Rockwell is. The Court: I think this is cross-examination, and you may ask it. Defendant's Counsel: Exception, please. Plaintiff's Counsel: Q. Who is Dr. Rockwell? A. Dr. Rockwell is a man that was visiting here at that time; a friend of mine from New York. Q. He went there on purpose in reference to this matter? A. He went with me. Q. Went there representing whom? Defendant's Counsel: I object to that as immaterial. (Objection sustained.) Plaintiff's Counsel: Q. Didn't Dr. Rockwell go there to try and settle with Manigold, and wasn't he representing the insurance company back of this company? Defendant's Counsel: I object to that question; and not only object to it, but we take an exception to the question put by counsel. The Court: The point about it is this: The question is not a proper question to ask. The objections are well taken, and the objections are sustained, and all that has been said on the subject on the part of the counsel stricken out, and the jury won't regard it, if the case goes to the jury. Plaintiff's Counsel: Give me an exception. Defendant's Counsel: Nevertheless, with all deference to the court, to what plaintiff's counsel said, I shall insist on my exception. The Court: It will have to go on the record as it is."

The law is well settled that it is improper to show, in an action of negligence, that the defendant is insured against loss in case of a recovery against it on account of its negligence. This was expressly held in the case of Wildrick v. Moore, 66 Hun, 630, 22 N. Y. Supp. 1119. It is not proper to inform the jury of such fact in any manner. It is not material to any issue involved in the trial of the action, and certainly plaintiff's counsel ought not to be permitted to do indi-

rectly what he would not be permitted to do directly. The fact that the defendant in this action was insured was brought to the knowledge of the jury as conclusively by what occurred as if the question had been answered in the affirmative, and it is evident that the question was asked and the inquiry pressed, even after the ruling of the court that it was incompetent, for the very purpose of getting such fact before the jury. Immediately before the direct question was asked, the court had ruled that the inquiry as to who Dr. Rockwell represented was incompetent, and the objection to that question was sustained, and yet plaintiff's counsel then asked the direct question, which was, in effect, a statement that there was an insurance company back of the defendant. In order to protect the defendant, its counsel was forced to object to the question, and yet by doing so he, in effect, admitted the fact; otherwise no objection would have been made. It is true the learned trial court properly struck out the answer, and instructed the jury not to consider it; but plaintiff's counsel improperly got the fact before the jury—a fact which he knew he was not entitled to, and which the court had just excluded by its ruling. We think this constituted error which requires a reversal of the judgment.

In the case of Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494, the Court of Appeals said:

"Counsel for plaintiff asked a witness for defendants this question: 'Do you know whether they carry insurance for accident to their employés?' This question was objected to as incompetent, and objection sustained. While the learned trial judge made a proper disposition of the matter, nevertheless the propounding of the question was calculated to convey an improper impression to the jury. The inquiry into the matter of insurance is not material, and the practice of asking a question that counsel must be assumed to know cannot be answered is highly reprehensible, and, where the trial court or Appellate Division is satisfied that the verdict of the jury has been influenced thereby, it should, for that reason, set aside the verdict."

In the case at bar it is impossible to say whether the statement of the counsel that there was an insurance company behind the defendant influenced the jury in rendering the verdict which it did. We have called attention to the fact that the question as to the extent of the plaintiff's injuries was, upon the evidence, a close question of fact; one that was involved in doubt; and its determination ought not to be prejudiced by imparting to the jury the information that the verdict rendered by it, whatever its amount, would not have to be paid by the defendant, but would be paid by an insurance company, which was back of it. Dr. Rockwell was not called as a witness. Nothing which he did or said had been disclosed to the jury. Under the circumstances, who he was or whom he represented was entirely immaterial; had no bearing upon any issue in the case. No other conclusion can be reached than that the question was asked and the statement made by plaintiff's counsel for the sole purpose of getting before the jury a fact which he was not entitled to, and for the purpose of improperly influencing its action. It cannot be said that it did not have such effect. The plaintiff, upon whom the burden should rest, has not satisfied us that the improper statement did not influence the verdict rendered.

We think the learned trial court committed error in charging the jury, in substance, that in an action of this character the burden of proof was thrown upon the defendant. In an action of this kind, a plaintiff, in order to be entitled to recover, must establish by a fair preponderance of proof that the defendant was guilty of negligence which caused the injury, and that he was free from contributory negligence. The burden of proof upon these questions is upon the plaintiff from the beginning to the close of the trial, and does not at any stage of the trial shift to the defendant. It follows that the judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined, and no error found therein. All concur.