CAPITAL CONSTRUCTION COMPANY *v.* HOLTZMAN.*

PERSONAL INJURIES; EVIDENCE; OBJECTIONS.

1. While this court is bound by the verdict in a personal injury case, and cannot consider whether it is excessive, the evidence as a whole, and the views expressed by the trial court as to the amount of the verdict, may be such as to call upon this court to scrutinize closely the proceedings upon the trial to see that no evidence was improperly ad-

*Elevators.*—The authorities dealing with the liability to a passenger injured through the operation of an elevator are presented in an editorial note to *Edwards* v. *Manufacturers' Bldg. Co.* 2 L. R. A. (N. S.) 744.

mitted, and that the result was not improperly affected by anything. that occurred during the trial.

2. In an action for personal injuries received as the result of an accident to defendant's elevator, it is error to permit the plaintiff to ask witnesses whether or not the defendant was insured against such accidents.

3. Where a question asked a witness is incompetent for any purpose, and. is of such a character that an objection thereto by opposing counsel is. equivalent to an admission of the truth of a statement embodied therein, the court will not inquire too closely into the ground of objection,. but will hold a general objection sufficient.

4. Semble, that where wholly incompetent evidence has been admitted the error is not cured by an instruction to the jury to disregard such evidence.

5. Where, in an action for personal injuries caused by an accident to defendant's elevator, the plaintiff has been permitted to prove, on cross-examination of the defendant's witness, that he is employed by an insurance company which insured the defendant against such accidents, it is error to permit further questions tending to bring out the nature of the insurance. The fact that the witness's employer has insured the defendant, if admissible at all, is admissible solely to show the bias of the witness, and not for any other purpose.

6. Where incompetent evidence has been admitted over objection, and, when commented upon by counsel, who adduced it, in addressing the jury, such comment is objected and excepted to, and counsel offers to withdraw it if it is objected to, but it is not withdrawn, and the jury is not instructed to disregard it, such error has been committed as to justify a reversal,—especially where it appears that the action of counsel in making such comment was specifically set forth as one of the grounds of a motion for a new trial. ( Distinguishing Yeager v. United States, 16 App. D. C. 356; Lorenz v. United States, 24 App. D. C. 337.)

No. 1581.  Submitted January 19, 1906.  Decided March 6, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action for personal injuries.                                Reversed.

The facts are sufficiently stated in the opinion.

Mr. R. Ross Perry and Mr. R. Ross Perry, Jr., for the appellant.

Mr. J. J. Darlington for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

The appellant, the Capital Construction Company, appeals. from a judgment entered against it, in favor of the appellee,. Jennie W. Holtzman, for the sum of $10,000, in a suit brought in the supreme court of the District of Columbia to recover damages for injuries sustained by her while riding in an elevator in an apartment house leased and operated by appellant. The accident resulting in the injuries appears to have been caused by the overloading of the elevator and the defective condition of some of the parts of the elevator machinery.

It is unnecessary, as we view the case, to inquire specially into the cause of the accident, for we think that the trial court's charge was fair and all that appellant had a right to ask. The assignment of errors predicated upon the alleged errors in the court's charge need not be particularly discussed, as we believe that they are not well founded.

The testimony as to extent of appellee's injuries is conflicting, as stated by the trial judge in his opinion denying a motion for a new trial. One ground upon which the motion was based was the alleged excessive damages found by the jury. In referring to that question the learned trial judge said: "If I had assessed the damages in this case I should probably not have found so large a sum. I would not have been surprised at a verdict for five thousand (($5,000)) or six thousand (($6,000)) dollars, but was somewhat surprised when the verdict was announced for ten thousand dollars (($10,000))."

Of the fourteen persons in the car the appellee was the only one to sustain any serious injury. While we are bound by the verdict, and cannot consider whether or not the amount assessed by the jury is excessive, we are, in view of all the evidence and of the views expressed as to the amount by the trial judge, called upon to scrutinize closely the proceedings upon the trial, as disclosed by the record, to see that no evidence was improperly admitted, and that the result was not improperly affected by anything that occurred during the trial.

If any such occurred, it is, in our opinion, to be found in

the testimony and proceedings relating to the question of appellant's being insured against loss occurring through accidents to its elevators.   It is earnestly contended by appellant's counsel that various errors occurred during the trial in this respect. They are presented in the following of the assignment of errors:

1. The court erred in permitting the counsel for the plaintiff below to ask the witness John H. Stokes the following question: "Does this insurance company insure the defendant against accidents to its elevators?" and in permitting the said witness to substantially answer the said question affirmatively.

2. The court erred in permitting the witnesses Barrett and Beaman to be interrogated, with respect to the existence of such insurance, and to answer affirmatively.

3. The court erred in *sua sponte* asking the witness Beaman questions concerning the existence of such insurance, and in admitting the answers of said witness concerning the same.

4. The court erred in not discharging the jury from the further consideration of the case at bar when its attention was called by counsel for the defendant to the language to the jury of counsel for the plaintiff in his concluding argument, of the following purport:   "We are told by those inspectors in the employ of this insurance company, which is financially behind this action."

5. The court erred in not *sua sponte* discharging the jury when the question was asked by plaintiff's counsel of the witness Stokes, as hereinbefore set forth, as to the existence of such insurance.

6. The court erred in not *sua sponte* charging the jury to disregard all evidence touching the existence of such insurance.

7. The court erred in not *sua sponte* charging the jury to disregard the aforesaid remark of counsel for the plaintiff in his concluding argument to them.

8. The court erred in refusing to grant the motions of the defendant to strike out the testimony relating to the existence of such insurance, and also to the number of rooms and tenants in the house in question.

These alleged errors of the court may be grouped under these heads:

First. Error in permitting witness Stokes to be interrogated as to the defendant being insured against accidents to its elevators.

Second. Error in permitting the witnesses Barrett and Beaman to give testimony relative to such insurance and its nature.

Third. Error arising out of the failure of the court on its own motion to either withdraw the case from the jury after plaintiff's counsel in his address to the jury had stated that the insurance company was back of the defendant, or in not charging the jury to disregard such statement.

Fourth. Error in not charging the jury to disregard all testimony relative to the existence of any insurance.

After a careful consideration of the record, it is apparent that the fact of the existence of insurance against accidents arising out of the use of the elevators was so industriously called to the attention of the jury that we feel convinced that it was not without its effect. If to do this was error, and if such objections and exceptions as were necessary were duly taken, then we think the judgment must be reversed and a new trial had.

First. During the cross-examination of the witness Stokes, manager of the apartment house, the following occurred:

"*Q.* Who was Mr. Barrett, Mr. Stokes? *A.* Mr. Barrett is an elevator inspector, sir.

"*Q.* An official of the District? *A.* No, sir.

"*Q.* Whose elevator inspector is he? *A.* The Fidelity and Casualty Company of New York.

"*Q.* Who are they? *A.* An insurance company."

\*      \*      \*      \*      \*      \*      \*

"*Q.* Does this insurance company insure the defendant against accidents to its elevators?"

Mr. Perry, Jr.: "One moment; I object to that, your honor, unless he knows of his own knowledge."

Mr. Darlington: "Of course, if he does not know—"

Mr. Perry, Jr.: "He can produce the policy if he has one."

"*A.* Yes, sir."

By Mr. Darlington:

"*Q.* Who is the custodian of that policy? *A.* Myself.

"*Q.* Have you it with you ? *A.* No, sir.

"*Q.* Will you produce it before the close of the session ? *A.* Yes, sir."

We think that these questions and answers were wholly inadmissible, and were incompetent to prove, or to tend to prove, any issue in the case. Mr. Barrett had not been called as a witness.

The supreme court of Washington, in a well-considered case (*Iverson* v. *McDonnell,* 36 Wash. 73, 78 Pac. 202), said: "It is a fundamental principle of law, too well established to require the citation of authority, that testimony should not be introduced in a lawsuit which is not pertinent to the issues involved, and it could make no difference, so far as the merits of this case are concerned, whether the judgment which the respondent hoped to obtain should be paid by the appellant or by an insurance company. The pertinent questions under the issues for the jury to determine were whether or not the appellant had been guilty of negligence which was the proximate cause of the respondent's injury, and whether or not the respondent had been guilty of contributory negligence. * * * To the effect that it is improper practice in an action for personal injuries for counsel, either by testimony or by remarks made to the jury, to give the jury to understand that an insurance company is defending the case, see also *George A. Fuller Co.* v. *Darragh,* 101 Ill. App. 664; *Cosselmon* v. *Dunfee,* 172 N. Y. 507, 65 N. E. 494; *Sawyer* v. *J. M. Arnold Shoe Co.* 90 Me. 369, 38 Atl. 333. It is said by counsel for the respondent that these cases are not in point. But while, in some instances, the question was presented in a different form, they all proclaim as reprehensible the practice of endeavoring to get before a jury the fact that the judgment sought to be obtained will have to be paid by an insurance company, instead of by the defendant. But, even in the absence of any authority, and if the question were presented to this court as a matter of first impression, we should, without hesitancy, conclude that such practice was not in con-

formity with general principles of law, and hinders, rather than aids, the jury in arriving at a just verdict."

In *Cosselmon* v. *Dunfee, supra,* the court of appeals of New York said: "We affirm this judgment without opinion, but feel constrained to refer to an occurrence on the trial that has become too frequent in negligence cases.   Counsel for plaintiff asked a witness for defendants this question: 'Do you know whether they carry insurance for accident to their employees ?' This question was objected to as incompetent, and objection sustained.   While the learned trial judge made a proper disposition of the matter, nevertheless the propounding of the question was calculated to convey an improper impression to the jury.   The inquiry into the matter of insurance is not material, and the practice of asking a question that counsel must be assumed to know cannot be answered is highly reprehensible; and where the trial court or appellate division is satisfied that the verdict of the jury has been influenced thereby it should, for that reason, set aside the verdict."

To the same effect *Wildrick* v. *Moore,* 66 Hun, 630, 22 N. Y. Supp. 1119.

But it is urged by appellee that there is no sufficient objection to the questions asked of Mr. Stokes.

The question whether the insurance company insured the defendant was, in our opinion, incompetent for any purpose.   The objection was not based upon its incompetency; nevertheless, we think the question was one of those that requires only a general objection.   It is one of those questions where an objection is an admission of the correctness of the statement embodied in the question.   Such questions ought not to be asked, and, when asked, the court ought not to inquire too closely into the ground upon which the objection is based.

In *Manigold* v. *Black River Traction Co.* 81 App. Div. 383, 80 N. Y. Supp. 861, which was a case where a doctor visited the plaintiff in company with a representative of the defendant, the representative was asked whether the doctor did not go to settle with the plaintiff, and whether he was not representing an insurance company back of the defendant company.   The objec-

tion to the question was sustained, and all the testimony on the subject was stricken out and the jury directed not to consider it. The appellate court reversed the judgment rendered in favor of the plaintiff. The court said: "From the evidence contained in the record before us we are not prepared to hold that the verdict of the jury is excessive, and for that reason to reverse or modify the judgment. It is not necessary to pass upon that question at this time. It is apparent, however, that the real extent and character of the plaintiff's injuries is a matter of such uncertainty as to require that the determination of that issue should not be prejudiced by improper evidence or any procedure during the trial which might improperly affect the result. * * * The fact that the defendant in this action was insured was brought to the knowledge of the jury as conclusively by what occurred as if the question had been answered in the affirmative; and it is evident that the question was asked and the inquiry pressed, even after the ruling of the court that it was incompetent, for the very purpose of getting such fact before the jury. Immediately before the direct question was asked, the court had ruled that the inquiry as to who Dr. Rockwell represented was incompetent, and the objection to that question was sustained, and yet plaintiff's counsel then asked the direct question, which was, in effect, a statement that there was an insurance company back of the defendant. In order to protect the defendant, its counsel was forced to object to the question, and yet by doing so he, in effect, admitted the fact; otherwise no objection would have been made. It is true the learned trial court properly struck out the question, and instructed the jury not to consider it; but plaintiff's counsel improperly got the fact before the jury,—a fact which he knew he was not entitled to, and which the court had just excluded by its ruling. We think this constituted error which requires a reversal of the judgment."

We think it was error to permit the witness Stokes to be questioned as to the defendant being protected by an insurance company, and that, as the question was wholly incompetent, even if the jury had been told to disregard the testimony, and it

had been stricken from the record, the error would not have been cured. We have no doubt that it, taken in connection with the other proceedings complained of, might and probably did influence the jury in fixing the amount of damages.

Second. The second question to be considered refers to the questions asked of the witnesses Barrett and Beaman. It had already been shown that Barrett was an elevator inspector in the employ of the Fidelity & Casualty Company as an elevator inspector. Testimony had already been admitted showing that the Fidelity company had insured the defendant against accidents occurring from the use of its elevators. It would therefore seem to have been unnecessary, so far as showing the interest of the witness, to again call to the attention of the jury that the defendant was protected by the insurance company. Its only result would be to influence the minds of the jurymen. The more the subject was dwelt on the stronger the impression produced upon the jury. The record shows that the following proceedings occurred:

And thereupon counsel for the plaintiff began the cross-examination of one of said expert witnesses, to wit, William H. Barrett, by asking the following questions:

"*Q.* You have not told us yet what your business is. *A.* I am an elevator inspector.

"*Q.* For whom? *A.* For the Fidelity & Casualty Company."

To the giving of which answer the defendant, by its counsel, objected in the following words:

Mr. Perry, Sr.: "I object, if your honor pleases, and move to strike it out. I do not think it of any importance in this case."

The Court: "Well, I think it may be. It shows what kind of work he is doing, and how he comes to do it."

Mr. Perry, Sr.: "I except, if your honor pleases."

Mr. Darlington: "It goes a little beyond that. It simply shows that this witness is an employee of a company which is very much interested in this case, and biased."

The Court: "At any rate, I think it is competent upon cross-examination."

Mr. Perry, Sr.: "Of course, if your honor pleases, I must except to it, and it is understood that I do except, without repeating the exception."

But the court refused to entertain the said objection, or to grant the said motion; to which action of the court in allowing the said answer to be given, and in refusing to strike it out, counsel for the defendant then and there excepted, and the court entered the said exception upon its minutes.

And next the plaintiff, by her counsel, asked the following question:

"*Q.* I did not quite get the name of that company."

To the asking of which question the defendant, by its counsel, then and there objected, on the ground next hereinbefore specified; but the court overruled the said objection, and allowed the said answer to be given, over the objection of the defendant, and the witness answered:

"*A.* The Fidelity & Casualty Company."

To which action of the court the defendant then and there excepted, and the court entered the said exception upon its minutes.

And next the plaintiff, by her counsel, asked the following question:

"*Q.* What does it do? *A.* It employs me as an inspector."

And the said witness further testified that he believed the company insured elevators, but that he had never seen a policy that they had issued.

And thereafter the plaintiff, by her counsel, asked the following question:

"*Q.* Do you not know very well, Mr. Barrett, that at the time this accident happened there was an insurance policy by this company on this very elevator?"

To the asking of which question the defendant, by its counsel then and there, for the reason already stated, objected; but the court overruled the said objection, and allowed the said question to be answered, over the objection of the defendant, as follows:

"*A.* No, sir; I do not."

To which action of the court the defendant then and there

excepted, and the court entered the said exceptions upon its minutes.

And next the plaintiff, by counsel, asked the witness the following question:

"*Q.* Do you know that?"

To the asking of which question the defendant, by its counsel, for the reason assigned, objected; but the court overruled the said objection, and allowed the said question to be answered, over the objection of the defendant, as follows: "No, sir; I did not see the policy;" to which action of the court the defendant, by its counsel, then and there excepted, and the court entered the said exception upon its minutes.

Whereupon the witness answered, "No, sir; I did not see the policy;" and the following colloquy ensued:

Mr. Darlington: "Is there any objection about that? (Addressing counsel for the defendant.)"

Mr. Perry, Sr.: "I do not think I should be asked that, when I am excepting to this."

Mr. Darlington: "I am asking because Mr. Stokes undertook to bring that policy down with him, but he said he could not find it."

Mr. Perry, Sr.: "I did not hear anything about that."

Mr. Perry, Jr.: "You happened to be out at the time."

Mr. Perry, Sr.: "Yes; I did not hear anything of it at all."

Mr. Darlington: "Yes."

Whereupon the plaintiff, by counsel, asked the witness the following question:

"*Q.* You do not know, then, whether the company insured this elevator or not?"

To the asking of which question the defendant, by its counsel, objected for the reason already given; the court overruled the said objection and allowed the said question to be answered, over the objection of the defendant, as follows:

"*A.* I presume they do."

To which action of the court the defendant, by its counsel, then and there excepted, and the court entered the said exception upon its minutes.

Whereupon the plaintiff, by her counsel, asked the witness the following question:

"*Q.* Have you any doubt about it?"

To the asking of which question the defendant, by its counsel, for the reason already given, objected; whereupon the following colloquy ensued:

Mr. Perry, Jr.: "He said he did not know of his own knowledge."

The Court: "Mr. Stokes said they did when he testified."

Whereupon the court permitted the witness to answer the said question, over the objection of the defendant, as follows:

"*A.* I could not swear they do, because I have not seen the policy."

To which action of the court the defendant, by its counsel, then and there excepted, and the court entered the said exception upon its minutes.

Whereupon the following questions were asked and answers given:

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

By Mr. Darlington:

"*Q.* Were you requested by Mr. Perry to come, or by this insurance company? Did you come here at the request of Mr. Perry, or at the request of this insurance company? *A.* I came at the request of this insurance company.

"*Q.* Oh! When you said you came at the request of Mr. Perry, what did you mean? *A.* Why, Mr. Perry requested the insurance company to have me come.

"*Q.* Oh! Still, you do not know whether the insurance company insured this elevator? *A.* I cannot swear to it; no, sir.

"*Q.* To whom did you make the report of your inspection? *A.* To the New York office.

"*Q.* Of this insurance company? *A.* Yes, sir."

Mr. Perry, Sr.: "Of course it is understood that my exception is applying to every one of these questions and answers."

Mr. Darlington: "You mean to every one which refers to this insurance company?"

Mr. Perry, Sr.: "Every one since I excepted. Of course when you leave this subject—"

Mr. Darlington: "I understand it applies to my inquiries as to the relations of the insurance company to this elevator." .

To the asking of each and every one of which of the foregoing questions the defendant, by its counsel, at the time of the asking of the same, objected, for the reason hereinbefore given; but the court, in each instance, overruled the said objection, and allowed the witness to answer the said questions, respectively, as hereinbefore set forth; to which action, in each case, the defendant, by its counsel, excepted, and the court entered the said exceptions seriatim upon its minutes.

We are convinced that this line of examination could not fail to prejudice the jury and to materially injure the defendant.

Then a Mr. Beaman was called, and, on cross-examination, he testified that he was employed by the Fidelity & Casualty Company. Conceding that it was proper to show his bias by showing his connection with that company, it was improper and incompetent to continue the line of examination, and it did not tend to prove any issue in the case to ask him, "What does that insurance company do? What kind of insurance?" At this point the court interrogated the witness as follows:

"*Q.* No; I do not mean that; but what do they insure? Do they insure the elevators against breakage? *A.* No, sir.

"*Q.* Or do they insure people against accidents, or what is it? *A.* Yes, sir; the second one is right. They insure people against accidents.

"*Q.* They insure people against accidents in elevators? *A.* Yes, sir.

"*Q.* Their business is not insuring the elevators against breakage? *A.* No, sir; no, sir.

"*Q.* But insuring people against accidents? *A.* Yes, sir, as I understand it."

This was excepted to, and a motion made to strike it out. The court permitted it to stand, saying: "I think it is important for all these questions that I asked with reference to this man's

business to remain in, in order for the jury to weigh his testimony. That is what I asked them for."

We cannot agree with the trial justice. We are at a loss to comprehend how it was necessary or proper to so clearly place before the jury the proved fact that the insurance company was back of the defendant. The line of examination was properly objected to, and, the objections being overruled, exceptions were duly taken. At the most it was only permissible to prove, for the purpose of showing the bias of the witness Barrett, that he was an employee of the Fidelity & Casualty Company, and that that company had insured the defendant's elevator. To show the nature of the insurance was not necessary to show the witness's bias. To again prove that there was an insurance company back of the defendant, and the continuance of the examination by counsel and court, shows to our satisfaction that the determination of the issue was prejudiced by the testimony complained of. For this, if for no other reason, the judgment should be reversed.

Third. It appears by the record that when counsel for the plaintiff addressed the jury he said: "We are told by these inspectors in the employ of this insurance company—which is financially behind this action"—and that thereupon counsel for the defendant said to the court: "I object to that, your honor, and except to it." The court entered the exception upon its minutes, but took no further action upon it; the statement was allowed to stand, and no comment upon it was made by the court to the jury. Counsel for plaintiff, however, said: "If you object, I will take it out," to which counsel for defendant replied: "You cannot take it out." Thereupon counsel for plaintiff, resuming his argument, said: "We are told by these inspectors who are employed by this insurance company," etc.

We think the remark or statement objected and excepted to tended, when taken in connection with the improper and incompetent testimony hereinbefore referred to, to prevent a fair verdict. There is enough in this incident, following what had gone before, to warrant a reversal. The case at bar falls rather under the ruling of the Supreme Court in *Waldron* v. *Waldron*,

156 U. S. 361, 39 L. ed. 453, 15 Sup. Ct. Rep. 383, than within our ruling in *Yeager* v. *United States,* 16 App. D. C. 356, and *Lorenz* v. *United States,* 24 App. D. C. 337. In this case, as in the *Waldron Case,* the objectionable statement was promptly objected to and exceptions taken. The statement in that case was not withdrawn, while in this case counsel only offered to withdraw it if objected to. It had been objected to, and the offer to withdraw was only conditional. The evil had been done. In the *Yeager Case* the court directed the jury to disregard the statement, and directed them not to consider counsel's remark. Here the court did neither, but entered the exception on the minutes. We said in that case that the justice had done all that he was called upon to do. "He could not, of his own motion, withdraw a juror and continue the case for trial before another jury, without affording the defendant, probably, good foundation for a plea of former jeopardy." Such a condition was not presented in this case. Furthermore, there was no exception taken in that case. In the *Lorenz Case* the court interrupted counsel. We said had he not done so, and had he permitted him to continue the line of argument objected to, the judgment would have had to be reversed. It further appeared that the incident was not mentioned in any grounds set up in the motion for new trial that followed. Here the action of counsel for plaintiff in making the statement is specifically set out as one of the grounds upon which the motion for a new trial was founded.

We conclude that the assignment of error based upon the remark of counsel, and the proceedings following it, is well founded.

It seems to us unnecessary to further consider the assignments of error. We have found sufficient in the record to call for a reversal, and have set forth enough to warrant such action. After a full and careful review of the proceedings upon the trial, we are constrained to hold that the judgment appealed from should not stand. It follows, therefore, that the judgment must be reversed, with costs, and the case be remanded for new trial; and it is so ordered.                    *Reversed and remanded.*