LEVINSKI v. COOPER et al.

(Court of Civil Appeals of Texas. Austin. Dec. 6, 1911. Rehearing Denied Jan. 10, 1912.)

1. THEATERS AND SHOWS (§ 6*)—INJURIES TO PERSONS—QUESTION FOR JURY.

In an action for the drowning of plaintiff's minor son in a swimming pool at defendant's natatorium, whether defendant was negligent in failing to provide sufficient competent attendants to guard against injuries to persons using the pool *held* for the jury.

[Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 6.*]

**2. TRIAL (§ 110*)—MISCONDUCT OF COUNSEL —REFERENCE TO INDEMNITY INSURANCE.**

In an action for the death of plaintiff's minor son by being drowned in defendant's swimming pool, a question asked defendant if it was not a fact that he was so convinced that it was a dangerous place that he induced an indemnity company to make a bond for him was reversible error, though not answered, and though the court directed the jury that the question propounded was not evidence, and that they should not consider it in arriving at their verdict, and that they should not allow the question to have any influence on them in returning a verdict.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 110.*]

**3. THEATERS AND SHOWS (§ 6*)—NATATORIUM —SKILLED ATTENDANTS—CARE REQUIRED.**

Where defendant maintained and operated a swimming pool for the benefit of the public, he was not bound to provide a sufficient number of skilled attendants to insure the safety of the patrons using the pool, but was only bound to exercise ordinary care to provide a reasonably sufficient number of competent attendants for such purpose.

[Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 6.*]

**4. THEATERS AND SHOWS (§ 6*)—DANGEROUS PLACE—INSTRUCTIONS—INSURER.**

In an action for the death of plaintiff's minor son in defendant's swimming pool, an instruction that defendant was bound to provide a sufficient number of skilled attendants to "insure" the safety of patrons using the pool was objectionable in the use of the word "insure," as requiring too high a degree of care.

[Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 6.*]

**5. DEATH (§ 14*)—STATUTES—PERSONAL LIABILITY.**

Under Rev. St. 1895, art. 3017, subd. 2, providing that an action for actual damages on account of injuries causing the death of any person may be brought when the death is caused by the wrongful act, negligence, unskillfulness, or default of another, one maintaining a swimming pool for the use of the public, in which plaintiff's minor son was drowned, was only liable for his own negligence in failing to provide sufficient competent attendants to guard against such occurrences, but was not liable for any negligence on the part of the attendants provided in failing to promptly rescue decedent on his falling into danger.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 16; Dec. Dig. § 14.*]

Appeal from District Court, McLennan County; Marshall Surratt, Judge.

Action by R. M. Cooper and others against J. Levinski. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Baker & Baker, for appellant. Allan Sanford and O. M. Weatherby, for appellees.

RICE, J. This suit was brought by R. M. Cooper and wife, Lillie Cooper, appellees herein, against Levinski, appellant, to recover damages sustained on account of the death of their son, Herbert Cooper, a boy 12 years of age.

It was alleged that appellant owned and operated a natatorium in the city of Waco, on October 17, 1909, which contained a large swimming pool, which he advertised for the use of adults and children, and that children who went in swimming there would be looked after and cared for, and that appellees, relying thereon, permitted their son Herbert to go swimming in this natatorium, and that while so doing he slipped and fell into the pool, where he was drowned. The negligence alleged consisted in the failure of appellant to furnish a sufficient number of skilled attendants to protect the boy from danger while swimming in said pool, which is alleged to be a dangerous place. Appellant answered by general and special exceptions, general denial, and, further, that it was dangerous to swim in said pool, which fact was known, both by Herbert Cooper and appellees, and that they assumed all risk thereof; and, further, that Herbert Cooper, just before and at the time he was drowned, was playing upon the marble walk around the swimming pool, and while so doing slipped and fell, striking his head against the curbing of the pool, which so stunned him that he drowned in consequence thereof, and but for which he would not have drowned; and that it was a mere accident, which would have happened to any one under the same or similar circumstances. There was a jury trial, resulting in a verdict in favor of appellees for the sum of $1,000, upon which judgment was rendered, and from which this appeal is prosecuted.

From the evidence it appears that appellant, on the 17th of October, 1909, owned and was operating a natatorium in the city of Waco. The swimming pool was about 35 feet wide by 70 feet in length, ranging in depth from 3 to 7 feet. During the day of October 17th, the pool was open for the public, and a large number of people had gathered there, some of whom were onlookers, and many of whom were bathers, among whom was Herbert Cooper, a boy over 12 years of age, the son of appellees. Prior to this time, appellant had advertised this natatorium as being a suitable place for adults and children to bathe, stating that it was provided with sufficient attendants to protect the bathers from danger, which advertisement had been seen by the parents of said Herbert Cooper, and upon the strength of which he was permitted to visit the place on the day in question for bathing; and while there he became engaged in play with another boy, running around the edge of the pool, when he suddenly stumbled and fell into the pool, striking his head, either against the edge of the pool or a post, which apparently stunned him. The boy, though shown to have been a good swimmer, did not rise to the surface, and was within 8 or 10 minutes thereafter found at the bottom of the pool and promptly taken out, but all efforts to resuscitate him failed. It appears that there was one skilled and competent attendant on duty and in charge at the time

of this occurrence. There were several other persons who, it seems, were also acting as attendants, but who were not regularly employed or paid as such, receiving as compensation their baths free. There is a conflict in the evidence as to the position of these respective parties, and what they were doing at the time of this occurrence. No bruises were shown about the head or face of the boy, but physicians testifying as experts say that while, in their opinion, his death did not occur from the fall or blow that his drowning, if rendered unconscious thereby, might have resulted therefrom. It was shown that Herbert Cooper was a stout, healthy boy of his age, was intelligent, kindly disposed, and was capable of rendering great service to his parents.

[1] Numerous errors have been assigned, urging a reversal of the judgment, all of which need not be discussed. The first assignment questions the sufficiency of the evidence to support the verdict, in this: That appellant asserts that there was no evidence going to show that he was guilty of negligence in failing to provide a sufficient number of competent attendants to watch over the swimmers in the pool, or that the drowning of Herbert Cooper, or his death, resulted from any negligence of appellant; but, on the contrary, the undisputed evidence showed that the pool master, Potts, was a competent person, and that he alone was enough to guard said pool, and that in addition thereto there were a number of other watchmen, and that there was no evidence to show that the number was insufficient, or that any of them were incompetent. Since the case will be reversed for other reasons, we deem it improper to pass upon this assignment, and forego a discussion of the questions presented, merely holding that the evidence on this issue, while circumstantial in its character, was sufficient to require the court to submit the same for the determination of the jury, without indicating any opinion as to the sufficiency of the same to support a finding thereon.

For similar reasons, we overrule the second and third assignments, complaining of the failure of the court to instruct a verdict in behalf of the defendant.

[2] During the progress of the trial, defendant was called to the stand by plaintiff's counsel, and asked the following question: "Isn't it a fact that you were so convinced that it was a dangerous place that you induced an indemnity company to make a bond for you?" This question was promptly excepted to by the defendant. The question was not answered. After a short discussion of its admissibility, at the request of counsel for appellant, the jury were retired. During their absence, the question of its admissibility was again and more fully discussed, the court holding that the question was inadmissible, and should not be answered, whereupon the jury were returned to the court;

counsel for appellant renewing his objection, on the ground first stated, that the question was immaterial to any issue, was calculated prejudice the jury and influence a finding against him. The objection was sustained, and the court, addressing the jury, stated that the question propounded was not evidence, and that they must not consider it in arriving at their verdict. Nor should they allow said question to have any influence upon them in returning a verdict in the case. Counsel for appellees, as shown by the bill, said that, in his opinion, as gathered from the authorities, the question was not admissible in the general run of cases, but thought that it was for the purpose for which it was offered in this case. This remark was likewise excepted to by counsel for appellant.

The question, we think, was improper, and the court was correct in excluding it; but counsel for appellant insist that, notwithstanding the action of the court in so sustaining his objection, still the fact that the question was asked was so highly prejudicial to appellant's rights as that, within itself, it calls for a reversal of the case, citing in support of his contention Harry Bros. Co. v. Brady, 86 S. W. 616; Lone Star Brewing Co. v. Voith, 84 S. W. 1101; Trent v. Lechtman Printing Co., 141 Mo. App. 437, 126 S. W. 242, 243; Manigold v. Black River Traction Co., 81 App. Div. 381, 80 N. Y. Supp. 861; Lipschutz v. Ross (Sup.) 84 N. Y. Supp. 632. In the first case cited, where a similar question was involved, it was held (Justice Rainey delivering the opinion of the court) that the pressing of such a question was reversible error, stating that the casualty company was not a party to the litigation, and that the persistency with which the inquiry was pursued was calculated to impress the jury that the plaintiff would not have the judgment to pay, but that it would fall on some insurance company.

In Gore v. Brockman, 138 Mo. App. 231, 119 S. W. 1082, the defendant, a doctor, was asked in a malpractice suit if he did not have doctor's protective insurance. Speaking through Ellison, J., that court said: "The question was improper and highly prejudicial. The issue on trial was negligent treatment of plaintiff by defendant as her physician, and indemnity insurance would not aid in determining that question; but, more than that, its tendency, in effect, was to withdraw the real defendant from the consideration of the jury, and to substitute for him an insurance company. A litigant has a right to his own personality, and the opposing party has no right to have the consideration of his claim influenced or measured by any other standard, so far as individuality is concerned, than that afforded by the party of whom he complains. He cannot ask unliquidated damages of a good man, who may have injured him, and then substitute a bad man at the trial. The subject has been be-

fore the courts, and similar questions have been condemned."

In Trent v. Lechtman Printing Co., supra, it is held that in a personal injury suit evidence that the defendant carried employer's accident insurance was wholly irrelevant; and a failure on the part of the court to grant a motion asking that the jury be discharged on account of the asking of a question eliciting such information was held reversible error, notwithstanding the court had instructed the jury to disregard the question, suggesting that this was no antidote for the poison that might have been injected by the question.

In Manigold v. Black River Traction Co., supra, it was held reversible error to ask a question as to whether or not an insurance company was back of the defendant, where it did not affirmatively appear that it did not affect the verdict, though the court instructed the jury that they should not regard it; the court saying, in passing upon the question: "The law is well settled that it is improper to show, in an action of negligence, that the defendant is insured against loss, in case of recovery against it on account of its negligence. This was expressly held in the case of Wildrick v. Moore, 66 Hun, 630, 22 N. Y. Supp. 1119. It is not proper to inform the jury of such fact in any way. It is not material to any issue involved in the trial of the action, and certainly plaintiff's counsel ought not to be permitted to do indirectly what he would not be permitted to do directly. The fact that the defendant in this action was insured was brought to the knowledge of the jury as conclusively by what occurred as if the question had been answered in the affirmative. * * *"

This court has recently reversed a case where counsel for plaintiff, over objection by counsel for defendant, had twice asked questions bringing out the facts, first, that the deceased was a married man, and, second, that he had children; the court holding (Mr. Justice Key delivering the opinion) that whether or not such knowledge would influence the jury, after they had been admonished by the court not to consider it as testimony, is a matter of speculation, about which there is no certainty; further stating that the only remedy, under the circumstances, for improperly getting such immaterial evidence before the jury was a reversal of the case. M., K. & T. Ry. Co. v. Thomas, 132 S. W. 974.

The question in this case of liability vel non, under the facts, was a closely contested issue; and it seems to us that the asking of this question, under the circumstances, was highly prejudicial to the rights of appellant, and may have, and likely did, influence the jury in returning their verdict. We therefore sustain the assignment presenting this question.

[3] The seventh assignment assails the fourth paragraph of the court's charge, on the ground that it requires the defendant to provide skilled attendants in sufficient numbers to insure the safety of patrons bathing in said pool at the time said Herbert Cooper was drowned, first, because the defendant in law was only required to exercise ordinary care in their selection; second, it was upon the weight of the evidence, in that it required the defendant to provide attendants, in the face of the undisputed evidence that one attendant was sufficient to watch the pool bathers, and by use of the words "attendants" the court's charge assumed that more than one attendant was necessary, and assumed that any attendant or attendants was necessary; the burden of the proof being on the plaintiff to show this, under the defendant's general denial; third, it required the defendant to insure the safety of his patrons, thereby constituting defendant an insurer of their safety; fourth, it should have been confined to the care required to be exercised over Herbert Cooper, and not the patrons in general; fifth, it was upon the weight of evidence, by his proposition thereunder insisting that it was error to instruct the jury that if appellant failed to provide skilled attendants at said pool in sufficient numbers to insure the safety of the patrons, etc., he would be liable, because the law only required appellant to exercise ordinary care to do this. The charge complained of is as follows: "Now, if you believe from the evidence that the defendant failed to provide skilled attendants at said pool in sufficient numbers to insure the safety of the patrons engaged in said pool at the time said Herbert Cooper was drowned, and you further believe from the evidence that in such failure, if any, the defendant was guilty of negligence, and you further believe from the evidence that said Herbert Cooper was drowned in said pool, thereby causing his death, and that but for such negligence, if any, upon the part of the defendant he would not have been drowned, then, and in that event, if you so find, you will find for the plaintiff, unless you find for the defendant under the other charges herewith submitted," etc.

[4] It was not the absolute duty of appellant to have provided skilled attendants at said pool in sufficient numbers to insure the safety of the patrons engaged in said pool at the time said Herbert Cooper was drowned; *but it was only his duty to exercise ordinary care to provide a reasonably sufficient number of competent attendants for such purpose.* The charge complained of, by requiring the jury to believe that such failure to so furnish a sufficient number must have been negligence before they could find for the plaintiff, may have possibly freed the same from the objection urged against it, still we are inclined to believe that it would have been better to merely charge the jury as above indicated on this phase of the case

The use of the word "insure" in the charge, it seems to us, is also objectionable, in that it demanded a higher and greater amount of care than is required of appellant under the law, because, in no event, was he required to insure his patrons against danger, but only to exercise ordinary care in undertaking to protect them from danger. Mo. Pac. R. Co. v. Lyde, 57 Tex. 507.

[5] The sixth paragraph of the court's charge is as follows: "If you believe from the evidence that Herbert Cooper fell and struck his head against the floor or other hard substance, and that his death was caused by the blow thus received, and would have resulted, had he not fallen in the water, then you will find for the defendant, although you may believe the defendant was guilty of negligence as charged by the plaintiff; but if you believe he fell and struck his head, as above stated, and that his death was not caused thereby, and that he would not have died, had he not fallen in the water, and you further believe, had he been rescued before drowning, that he would not have lost his life, then, if you believe that the failure to so rescue him was the result of negligence, if any, of the defendant, as submitted in paragraph 4 of this charge, then you will find for the plaintiff, unless you find for defendant under other charges given you." This charge is made the subject of complaint by appellant's eighth assignment of error, which in effect urges that it permitted a recovery on behalf of appellees on account of the negligence of the attendants in failing to rescue the boy after he had fallen into the water, and did not limit plaintiff's recovery to the alleged negligence of the defendant in failing to provide a sufficient number of attendants to guard its patrons against danger from drowning. Notwithstanding this paragraph, when considered in connection with paragraph 4, to which the jury were referred in order to ascertain what acts of negligence they might consider as against the defendant, may relieve it from the objections made to it, still we are inclined to believe that it should not have been given, since, under the second section of article 3017 of the Revised Statutes, defendant could not be held liable for the negligent acts of his servants in not promptly rescuing the boy, but only for his own individual acts of negligence, if any, in failing to provide a sufficient number of competent attendants.

Appellant requested and the court refused to give the following special charge: "If you believe from the evidence in this case that Herbert Cooper died from his head coming in contact with the curbstone or post alongside of the defendant's swimming pool, and that death would have resulted from the blow therefrom, whether Herbert Cooper had fallen in the water or not, you will find for the defendant without further considering the case; but if you should consider it further you are instructed that if the defendant, Levinski, used such care as a person of ordinary prudence would have used under the same or similar circumstances in providing a sufficient number of competent watchers for said pool you will find for the defendant, although you may find that Herbert Cooper was rendered unconscious by his head coming in contact with said curbing or post, and stunned thereby to such an extent that he was incapacitated from extricating himself from the waters of said pool, and, although you may find that such watchman did not exercise ordinary care in keeping a lookout, and by the exercise of the same might have observed the said Herbert Cooper at the time he fell, or learned of his said fall in time to have rescued and saved him, if you find that he might have been saved." This charge, in effect, directed the minds of the jury to the true issue in the case; that is to say that the defendant could only be held liable, in the event of his own negligence, with reference to the employment of a sufficient number of skilled and competent attendants. He was not in any sense responsible for the negligence of such attendants, if he had exercised ordinary care in selecting and furnishing reasonably competent and suitable persons for such purpose. So that, if the drowning of Herbert Cooper in fact resulted from the negligent failure of said attendants to rescue the boy after he had fallen into the pool, this negligence would not have been sufficient to have cast liability upon appellant, provided he had discharged his duty in their selection, for which reason the court erred in refusing to give said special charge.

We have considered the remaining assignments, and, believing that they are without merit, all of them are overruled, but, for the reasons heretofore indicated, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.