Hurlbut, J.,
dissenting.
My dissent to the majority opinion is based solely upon a conviction that it is in direct conflict with the prior decisions of our Supreme Court.
The interrogatory propounded to the juror upon his voir dire, and upon which the validity of the judgment hinges, was as follows:
“Q. Do you know Mr. Felker or Mr. Dickinson, who represent the Ocean Insurance Company in this case?”
The question was promptly objected tó, but the objection was not explicitly sustained by the court. The -form of the .interrogatory in no way tended to elicit from the juror any information or knowledge which might be a possible guide to plaintiff in the exercise of a peremptory challenge or one for cause. There was no issue formed by the pleadings which would permit of any evidence tending to establish the fact that either Mr. Felker or Mr. Dickinson was acting as counsel for the Ocean Insurance Company in the action being 'tried by the court. The form of the question precludes any assumption that the interrogatory was made in good faith, or for any other purpose than to directly prejudice the minds of the jury against the defendant. But one motive could have actuated the interrogatory in question, namely, to thereby communicate knowledge to the venireman interrogated, as well as all other prospective jurors present, that the Ocean Insurance Company was interested in the case, and would have to respond to any judgment that might be rendered against defendant; in other words', that The Parkdale Fuel Company was only the nominal defendant, while the insurance company was the real defendant in interest. The *318 commanding issue in the case to be tried by the jury was as to whether or not the defendant had been guilty of negligence in causing the death of plaintiff’s husband. The record shows that the widow and children of deceased were present at the trial and testified. This fact of itself would have a tendency to- enlist the sympathy of the jury for the misfortune overtaking the widow and orphans, through the deplorable death of their protector. . Under these circumstances common justice required that defendant be accorded a fair and impartial trial of the issues, without the interpolation of any inadmissible matters which would tend to prejudice its rights. Can it be said, with even reasonable certainty, that defendant could hope for an unbiased and dispassionate consideration by the jury of the question of negligence, as between itself and plaintiff, if the jury believed, and had good reason to believe, that no verdict which they would render in favor of plaintiff would in the slightest degree affect The Parkdale Fuel Company, but any judgment founded thereon would hav.e to be paid by one of the great insurance companies of the country ?
The case of Coe, et al. v. Van Why, 33 Colo. 315, 80 Pac. 894, 3 Ann. Cas. 552, was a personal injury action wherein plaintiff’s counsel, in his argument to the jury, commented on the custom of mining companies, in protecting themselves against liability on account of injuries tó their employes by talcing out insurance, there being no issue upon the matter. The trial court immediately adfnonished counsel, and instructed the jury to disregard such statement, and not to consider it for any purpose. The Supreme Court, however, held that such admonition and instruction did not cure the error, saying:
“We are satisfied that the unfavorable impression on the minds of the jury was not removed by the direction of the court tO' disregard the statement. Counsel knew when he made it that it was improper and reprehensible, and it is fair to presume that he would not have done so, had he not sup *319 posed that some advantage to his client would thereby be gained. In such cases counsel who thus seeks to obtain that result takes upon himself the risk of losing what he hopes to secure. The following, among other cases, are authority for the reversal of the judgment for sucli conduct of counsel,” citing cases.
In the instant case the trial court not only failed to clearly sustain the objection, or reprimand plaintiff’s counsel for propounding the interrogatory in question, but it in no way admonished the jury at that time or subsequently that the interrogatory was improper, and that they should disregard the same for any purpose in deliberating upon their verdict. By failing to do so, I think the court was remiss, in its duty, and its silence in that behalf emphasizes the error and prejudice suffered by defendant thereby. It must be apparent from what has just been said that the error committed was more aggravated than in the Coe case. The trial court had four opportunities (emanating from motions made by defendant’s counsel) to discharge the jury and grant a continuance or new trial, the first of said motions being made while the jury were being impaneled, the second at the close of plaintiff’s testimony, the third at the close of the trial, and the fourth in the hearing upon motion for new trial. In each instance the court denied the motion.
Vindicator Con. C. M. Co. v. Firstbrook, 36 Colo. 498, 86 Pac. 313, 10 Am. Cas. 1108, was another personal injury case, in which the veniremen, being examined upon their voir dire, were asked, over objection, if they were interested as agents or otherwise, or ever had been interestd, in The Frankfort Marine Accident & Plate Glass Insurance Company, no such issue being involved. The supreme court decided that the questions were proper, but adhered to and reaffirmed in no uncertain language, the doctrine laid down in the Coe v. Van Why case, saying:
"In the selection of jurors counsel are allowed considerable latitude not only for the purpose of ascertaining whether *320 or not grounds exist for challenges for cause, but, also, for the purpose of intelligently exercising peremptory challenges. Such questions are for the purpose of eliciting information from, and not imparting it to, the jurors. They are not barred, however, though directed to matters not in issue, provided it appears they are pertinent, are made in good faith, and for the purpose of excluding from the panel partial or prejudiced persons, or those who, by reason of interest in the result, would be- incompetent. * * * In announcing this rule, we would not be understood as departing in the slightest degree from the salutary one announced in Coe v. Van Why, 33 Colo. 315, where it appeared that the statement of counsel in argument that the defendant was insured' in an employers’ liability company was made for the purpose of prejudicing and influencing the jury in favor of the plaintiff, and not to elicit information touching their competency to sit as jurors in the case.”
In Bartell v. Griffin, 47 Colo. 569, 108 Pac. 171, the Supreme Court again emphasized the same doctrine. It appears that the trial court admitted, over objection, the following question and answer, viz:
“Q. If you should lose this case, Mr. Barteli, you would look tO' the bondsmen to settle with you for any damage you would sustain? A. I surely would.”
This ruling the court was pressed as reversible error in the Supreme Court. The court said:
“There was no' such issue in the case, and it was clearly error to overrule the objection made. * * * ' As was said in substance in Coe v. Van Why, 33 Colo. 315, in such case counsel who thus seeks to obtain an advantage for his client takes upon himself the risk of losing what he hopes to secure. Cases should be tried before a jury on competent testimony. The rights of litigants can only be preserved by adhering to this rule, and when a party to an action insists upon getting before a jury testimony which is incompetent and is intended to prejudice the rights of his adversary, he does so at his *321 peril, when, as in the case at bar, the testimony on the issues made by the pleadings is conflicting, or is of that character that different conclusions of fact might be deduced therefrom.”
From the three decisions last cited it seems to be settled in this jurisdiction that in cases of this kind it is reversible error to propound to veniremen such questions as we are now considering, when the matter inquired of is not in issue, and it appears to be equally prejudicial whether the objectionable information imparted to the jury in evident bad faith reached it by interrogating veniremen, addressing the jury, or examining witnesses.
As I analyze the Coe case, it is decisive of this appeal in favor of appellant upon the first three assignments of error. That case is rendered more emphatic as authority upon the point by reason of its being cited and followed in the subsequent cases to which I have alluded. These cases are binding upon this court, amdi there is nothing left for it to do but follow the rule there laid down. The general situation, as to facts and circumstances in the instant case, as I understand it, appears to be not substantially different from that of the cases cited. We ought not to' disregard the supreme authority. Our Supreme Court is far from being alone in the rule it has adopted. On the contrary it is supported by a multitude of authorities- of high standing, as the following list will disclose: Fuller Company v. Darragh, 101 Ill. Ap. 664; Hordern v. Salvation Army, 124 App. Div. 674, 109 N. Y. Supp. 131; Frahm v. Siegel-Cooper Co., 131 App. Div. 747, 116 N. Y. Supp. 90; Manigold Co. v. Black River Traction Co., 81 App. Div. 381, 80 N. Y. Supp. 861; Donnelly v. Younglove Lumber Co., 140 App. Div. 846, 125 N. Y. Supp. 689; Sawyer v. Arnold Shoe Co., 90 Me. 369, 38 Atl. 333; Emery Dry Goods Co. v. De Hart, 130 Ill. App. 244; Hollis v. U. S. Glass Co., 220 Pa. 49, 69 Atl. 55; Kentucky W. Mfg. Co. v. Duganics, (Ky.) 113 S. W. 128.
*322 There appears to be' an exception to the rule stated in the' Coe case, which is that, notwithstanding the error germinated by counsel’s misconduct, if there are no close questions of fact and the record affirmatively shows that the same was not prejudicial to> defendant, such error will not work a reversal. In recognition of the exception the case of Tanner v. Harper, 32 Colo. 156, 75 Pac. 404, may be cited. That was a personal injury case in which plaintiff’s counsel told the jury, while it was being impaneled, that a certain insurance company was the real party in interest, to which objection was made and sustained, the court telling the jury that they should disregard counsel’s remark. The Supreme Court held that such statement was not reversible error, provided the record affirmatively showed that defendant was not prejudiced thereby, and proceeded to say that:
“The great weight of the testimony on the question of the negligence of defendants in constructing the track, and also on the subject of the alleged contributory negligence of the plaintiff, was overwhelmingly in favor of the latter. * * * So' it appears from the record that there were no- close questions of fact in the determination of which the jury might have been unconsciously influenced by the consideration of extraneous and improper matter.”
Comparing that case, as to issues of fact and proofs, with the one before us, I find the situation is entirely different. I do' not think it can be fairly said in the case at bar that there are no close questions of fact involved. On the contrary, it seems that all the material issues being tried were sharply contested. There was sufficient evidence to have well sustained a verdict for defendant, had the jury so found. On the question of negligence and contributory negligence the testimony on the part of defendant shows that deceased was positively instructed by Webb, the manager of the mine, to not go into' the incline at any time during working hours, and that for weeks prior to and at the time of the accident, printed or written notices to that effect were posted at the *323 portal of the incline, easily observable by all-persons entering the same. On the other hand, plaintiff’s testimony tends 'to show that no such notice was posted, and further that Webb told deceased to go into the incline at the time he did, and fix the roll. Webb denied that he ever gave deceased any such order. So upon these issues there was a close question of fact. As to the question of placing in the mine, and at the tipple, appliances and switches of a different character from those in use, we have the same situation — plaintiff’s evidence showing that defendant had promised to' do so, and defendant’s evidence showing that no such promise was made. Here again was an issue that was a close question of fact. Again, defendant strenuously contended at the trial, and so contends on this appeal, that there is not sufficient evidence to show that Gobo failed to couple the car or failed to do' his duty in seeing that the car did not escape as- a wild car. There were other material issues of fact before the jury which were controverted. I think it clearly appears from the record that the evidence on all material issues of fact was in sharp conflict, and for that reason it is readily distinguishable from the Tanner case. It cannot be reasonably said here, as in that case, that:
“The great weight of the testimony on the question of the negligence of defendants * * * or the alleged contributory negligence of the plaintiff, was overwhelmingly in favor of the latter.”
The most that can be fairly contended by either party is that the evidence was about equally balanced on these issues. The Tanner case preceded the Coe case, and the Supreme Court had the former before it when it announced the rule stated in the latter.
I think the judgment should be reversed and cause remanded.