## CANDLAND v. MELLEN.

No. 2734.   Decided July 30, 1915.   (151 Pac. 341.)

1. APPEAL AND ERROR—NOTICE OF APPEAL—SUFFICIENCY.   Where judgment was rendered and entered April 30, 1914, and a motion for a new trial was overruled on May 9th, whereby the judgment became final, a notice of appeal reading, "The defendant does hereby appeal from the verdict and judgment entered on the verdict in the above-entitled cause on or about the 30th day of April, 1914, and from the order overruling a motion for a new trial, made and entered on the 9th day of May, 1914, and from the whole thereof," sufficiently identified and described the judgment appealed from; the statement of an appeal from the order overruling the motion for a new trial not affecting the statement that the appeal was taken from the judgment. (Page 522.)

2. APPEAL AND ERROR—DECISIONS REVIEWABLE—MOTION FOR NEW TRIAL.   No appeal lies from an order overruling a motion for a new trial.   (Page 522.)

3. APPEAL AND ERROR—DECISIONS APPEALABLE—FINAL JUDGMENT.   An appeal lies only from a final judgment entered in the cause. (Page 522.)

4. EXCEPTIONS, BILL OF—TIME FOR FILING—EXTENSIONS OF TIME.   Where a judgment against defendant became final on May 9th, an order on May 27th, granting him sixty days to serve and file a bill of exceptions, meant sixty days from the date the order was made, so that an order made July 19th extending the time to serve and file a bill was within the time first granted.   (Page 522.)

5. EXCEPTIONS, BILL OF—TIME FOR SERVICE SUSPENSION.   On the death of the plaintiff after judgment in her favor, either the time in which the defendant is required to serve a bill of exceptions is suspended until the appointment of an administrator, or the court, on defendant's application, had the power to extend the time until there was an administrator.   (Page 523.)

6. MUNICIPAL CORPORATIONS—EXCAVATION IN STREET—INJURY TO PEDESTRIAN—ACTION FOR INJURY—QUESTION FOR JURY.   In an action for personal injury from defendant's negligence in leaving an excavation in the street unguarded and unlighted, held, on the evidence, that whether plaintiff stepped into an excavation at the place alleged in the complaint, whether defendant had finished the work, and had turned it over to the city before the accident, whether there was an excavation at the place in question and its extent and character, and whether plaintiff was guilty of contributory negligence, were for the jury.   (Page 524.)

7. MUNICIPAL CORPORATIONS—EXCAVATION IN STREET—INJURY TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE—PRESUMPTION. In such case, it could not be conclusively inferred, from the fact that plaintiff resided near by, that she had full knowledge of the extent and character of the excavation. (Page 524.)

8. DAMAGES—PLEADING AND PROOF—EXPENSE—PHYSICIAN'S SERVICES. In an action for personal injury, an allegation that plaintiff had been and would be put to great expense in curing such injury, without challenge by special demurrer, was good enough to support proof of any expense; such as proof that $250 was the reasonable value for the services of a doctor who attended plaintiff. (Page 525.)

9. DAMAGES—INSTRUCTION—CONFORMITY TO EVIDENCE. In an action for personal injury from stepping into an excavation, where there was evidence of injury to plaintiff's leg and no evidence that the displacement and disease of the kidneys or the liver and intestines were traceable to such injury, the refusal to exclude damages resulting from an operation for such other diseases and for pains suffered from such diseases and the operation was erroneous. (Page 526.)

10. DAMAGES—INSTRUCTIONS—CONFORMITY TO EVIDENCE. In such action, where the only item of expense as to which any evidence was offered was as to the reasonable value of the services of the doctor who attended the plaintiff's injured leg, a charge permitting the jury to consider any cost or necessary reasonable expense in curing the injury was erroneous as beyond the issues made by the evidence. (Page 527.)

11. ABATEMENT AND REVIVAL—SURVIVAL OF CAUSE OF ACTION—ACTION FOR PERSONAL INJURY. A cause of action for personal injury due to negligence, will not survive the death of the plaintiff. (Page 528.)

12. ABATEMENT AND REVIVAL—DEATH PENDING APPEAL—EFFECT OF REVERSAL. In such case the cause of action was merged in the judgment, so that when the judgment was reversed the cause of action was gone and the action would be dismissed.[1] (Page 528.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Genevieve Candland, for whom, after her death, A. D. Candland, her administrator, was substituted, against J. W. Mellen.

Judgment for plaintiff. Defendant appeals.

[1]*Mason* v. *U. P. Ry. Co.,* 7 Utah, 77, 1 C. J. pp. 168, 169, 171, 24 Pac. 796.

REVERSED and case remanded, with directions to vacate the judgment and dismiss the action.

*Stewart, Stewart* and *Alexander,* for appellant.

*M. E. Wilson* and *E. G. Palmer,* for respondent.

STRAUP, C. J.

Genevie Candland brought this action to recover damages for an alleged personal injury. A judgment was rendered in her favor. The defendant appeals. The judgment was rendered and entered on the 30th of April, 1914. On May 2nd a motion for a new trial was served and filed. The motion was overruled on the 9th, of which notice was given on the same day. On May 27th, the court granted the defendant "60 days to prepare, serve, and file a bill of exceptions"; on July 17th, further time, to and including August 16th; on August 11th, to and including September 15th; on September 12th, to and including October 15th; on October 13th, to and including November 2nd. Genevie Candland died on the 5th of August, 1914. On the 2nd of October of that year, an administrator was appointed. On the 22nd of October, the administrator was substituted as the party plaintiff. On the 27th of October the defendant served on the attorneys for the administrator, who also represented Mrs. Candland in the action, his proposed bill of exceptions. It was settled on the 30th of October. On that day the defendant served on the attorneys for the administrator, and filed, his notice of appeal. Within thirty days thereafter the transcript on appeal was filed.

A motion is made to dismiss the appeal on alleged defects in the notice of appeal, and uncertainty of descriptions of the judgment appealed from. The notice reads:

"The defendant does hereby appeal from the verdict and judgment entered on the verdict in the above-entitled cause on or about the 30th day of April, 1914, and from the order overruling a motion for a new trial, made and entered on the 9th day of May, 1914, and from the whole thereof."

Of course, no appeal lies from the order overruling the mo-

tion for a new trial.   An appeal lies only from a final judg-
ment entered in the cause.   The judgment was en-
tered on the 30th of April.   It became final when    **1, 2, 3,**
the motion for a new trial was overruled on the 9th
of May.   The point made is that the final judgment was en-
tered on the 9th of May; that that was the only appealable
judgment, and, since the notice does not state that the appeal
was taken from the judgment entered on the 9th of May,
the notice did not properly identify or describe the judgment
which was appealable, but described one unappealable.   We
do not see anything to this.   There was no judgment ren-
dered or entered on the 9th of May.   The only judgment ren-
dered and entered in the cause was rendered and entered on
the 30th of April.   Because of the motion for a new trial made
within the time allowed by the statute, the judgment did not
become final until the motion was disposed of.   By overruling
the motion, the court refused to disturb the judgment which
theretofore had been made and entered on the 30th of April.
The judgment thus stood as it was made and entered.   The
notice sufficiently identified and described that judgment as
the judgment appealed from, the only judgment made and
entered in the cause.   The reference in the notice to the ver-
dict is surplusage.   The statement that the appeal is also
taken from the order overruling the motion for a new trial
does not destroy nor affect the statement that the appeal is
taken from the judgment.   The reference to the order can but
serve the purpose to show when the judgment became final
and the right to an appeal began.   The motion to dismiss is
denied.

A motion also is made to strike the bill of exceptions on
grounds:   (1)   That when the court, on July 17th, extended
the time to serve and file a bill, the time had expired,
and that the court then was without power to grant        **4**
further time; and (2) that the court was without power
to make orders extending the time after the death of Mrs.
Candland and before the appointment and substitution of an
administrator as plaintiff in the cause.   The first is based on
the order of May 27th, granting the defendant sixty days to
serve and file a bill. It is urged the sixty days date from May

9th when the notice of overruling the motion for a new trial was served. The time from that date until the next date, July 17th, when further extension was granted, is sixty nine days. Thus it is argued that the July order was made after the time theretofore granted had expired. We think the proper construction of the May 27th order is sixty days from that date; sixty days from the date the order was made. Counting sixty days from that time, the order of July 17th was within time.

The second ground is based on the proposition that after the death of Mrs. Candland, and before the appointment and substitution of an administrator, the court was without power to grant an extension of time to serve and file a bill. To support that the cases of *Judson* v. *Love,* 35 Cal. 463, *Shartzer* v. *Love,* 40 Cal. 93, *Pedlar* v. *Stroud,* 116 Cal. 461, 48 Pac. 371, and *Coffin* v. *Edgington,* 2 Idaho (Hasb.) 627, 23 Pac. 80, are cited. We do not think they support the contention. They are cases to this effect: That the service of a notice of an appeal or motion for a new trial, after the death of the other party and before the appointment and substitution of an administrator, was of no effect and did not confer jurisdiction to proceed. We think that is true. Had the defendant attempted to serve a bill or to have it settled after Mrs. Candland's death, and before the appointment and substitution of an administrator, such service or settlement would not be good. But the bill was not served nor settled until an adiministrator was appointed and substituted in the cause. The death of Mrs. Candland, after judgment, could not prevent the defendant from protecting his rights to further proceed in the cause when there was an administrator. One of two things must be true: Either the time in which the defendant was required to serve a bill was suspended by the death of the original plaintiff and until an administrator was appointed, or the court, by orders, on the defendant's application, had the power to keep the time alive until there was an administrator. Doing that is not proceeding in the cause without an adversary. Perhaps the better rule is that the time from the death to the appointment of the administrator was suspended. If that be not true, then must

the other be true; for, if neither be true, then was the defendant remediless.    The motion to strike the bill is denied.

The defendant, under contract with Salt Lake City, was engaged in curbing and guttering streets near where the deceased resided.    It is charged that he negligently left excavations exposed, unguarded, and unlighted, by reason of which plaintiff's intestate, in the nighttime, and on the 20th of September, 1913, stepped into an excavation, thereby wrenching and spraining her leg, "so that said plaintiff was and still is made to suffer great mental and physical pain and anguish, and so that she was made and still is sick, sore, and lame, and so that she has been confined to her bed from the 20th day of September, 1913, until now, and is still so confined, and so that said leg has been wholly useless to her, and so that she has thereby been prevented from walking and from performing her household duties as a housewife; that, by reason of the aforesaid injury, said plaintiff has been and for all time will be almost totally disabled, and has been and will be put to great expense in curing said injury, to wit, $800''; and "that by reason of the matters and things hereinbefore set forth, plaintiff has suffered damage in the sum of $5,000.''    She had judgment for $500.

Complaint is made of the court's refusal, at the conclusion of all the evidence, to direct a verdict in the defendant's favor.    The grounds of the motion are:    (1)    That in the complaint it is alleged the excavation in which the plaintiff's intestate stepped was at the "northwest corner" of two named streets, and that the proof showed that she **6, 7,** stepped into an excavation at or near the southwest corner of the streets—an excavation, as is contended, not made by the defendant.    (2)    That the defendant was not negligent, and that he had finished the work several days before the accident and had no further duty to perform in the premises.    And (3) that plaintiff's intestate was guilty of contributory negligence.    We think no error was committed in the ruling.    There was but one witness who testified concerning the deceased's stepping into the excavation.    That witness was her sister who accompanied her at the time.    In portions of her testimony she testified that the deceased

stepped into an excavation on the south side of the street; in other portions, at the place alleged in the complaint. We think that matter was for the jury.

As to whether the defendant had finished the work and had turned it over to the city before the accident, and as to whether there was an excavation at the place in question and the extent and character of it, the evidence is in conflict. So all that was for the jury.

Evidence was given to show that the excavation was about a foot and a half or two feet deep, that it was made by the defendant, that a plank extended over it, and that the excavation was left unguarded and unlighted by the defendant. The deceased's sister testified that the night was dark, and that she, preceding the deceased, walked on the plank over the excavation; that the deceased, following her, stepped or fell into the excavation; and that the witness returned and assisted her out and to her home near by. Because of severe illness at the time of the trial, plaintiff's intestate was not a witness in the case. There is no direct evidence what knowledge she had of the excavation. From her residing near by, it is argued, in effect, that it ought to be conclusively inferred that she had full knowledge of the extent and character of it. No such conclusive presumption can be indulged. And further, though she had such knowledge, still that alone would not render her conclusively guilty of negligence in attempting to cross the excavation. There is no evidence to show that she was careless in her movements, or failed to use due care in observing where she was walking. At least there is nothing to show that she was conclusively guilty of negligence in such respect. We therefore think all these questions were for the jury.

It also is claimed error was committed in allowing plaintiff's intestate, over the defendant's objections, to show that $250 was a reasonable value for the services of the doctor who attended her leg. It is claimed that that was improper because such damages were special and as such ought to have been, but were not, alleged. We have referred **8** to the allegations of the complaint in such respect, "that she has been and will be put to great expense in curing said

injury, to wit, $800." True, the allegation, "great expense in curing said injury," is quite general. But, without challenge by special demurrer, it is good enough to support proof of any expense. The doctor's services were expenses. We think the evidence was properly received.

We come now to the charge. The next day after the injury a doctor was summoned. A couple of days after that he turned the case over to a bone specialist. He found the ankle and knee joint inflamed, swollen, tender, and painful. He administered local applications. He visited the plaintiff on and off for about a month, when another doctor, with him, saw the case. The conclusion was then reached that plaintiff's intestate had tuberculosis of the knee joint. They gave testimony that the injury could have caused that; that if a person had tubercular bacilli in the body they might lodge in the inflamed knee joint, and in that way produce tuberculosis of the knee; but that the injury itself would not spontaneously produce a tubercular condition. Her leg was put in a cast and rest prescribed. While her leg was yet in the cast, she, in March following, suffered from abdominal ailments and disorders. Three physicians diagnosed the trouble as appendicitis. An operation was performed. The appendix was successfully removed, but it was found not to be involved, and that that was not the cause of the disorder. It then was found that she was suffering from an elarged, sclerotic, and tubercular condition of the liver, a diseased and displaced kidney, and diseased intestines. It is not shown that these disorders were traceable to the injury to the leg. She was kept at the hospital most of the time, gradually grew worse, and at the time of the trial was unable to be a witness. The defendant requested the court to charge that plaintiff's intestate was not entitled to damages resulting from the operation in March, nor for pain suffered from such sickness and operation. The court refused that, and charged that:

"In determining the amount of damage to be awarded, if you find that the plaintiff is entitled to damages, you are only to award damages sustained which did in this case naturally and directly result from the wrongful acts alleged and from the injuries described as disclosed by the evidence."

It is thus seen the court permitted the jury to say whether the ailments and disorders from which plaintiff's intestate suffered in March, and which resulted in the operation and her confinement in the hospital, were due to the spraining and wrenching of her leg, and whether they were the direct and natural result of the defendant's alleged negligent acts. We do not see any evidence to justify a finding that the displacement and disease of the kidney, or the disease of the liver and intestines, were traceable to the injury to the leg. Because of a want of such proof, we think the court, on the defendant's request, ought to have excluded those from the consideration of the jury. Since the verdict was only for $500, it may be argued that the jury in fact excluded them. But that is speculative. On the record it cannot be told whether the jury did or did not do that.

Evidence was given to show that one doctor regularly attended plaintiff's intestate for the injury to her leg, that another attended her for other disorders, that two others assisted in the operation, and that she, after the operation, was, much of the time, confined in the hospital. The only item of expense concerning which any evidence was adduced was as to the reasonable value of the services of the doctor who attended the leg, and that that service was worth $250. No evidence was adduced as to the value of services of the other physicians who attended her, nor for the operation, nor for expenses at the hospital. In determining the amount of damages which the jury could award, the court, among other things, told them that they could "take into consideration any cost or necessary and reasonable expenses that it may be necessary for her to pay in curing the injury, if any, which she suffered by reason of the negligence of the defendant." Complaint is made of that. It is urged that, in view of the evidence, the jury, as to expenses, ought to have been restricted to the reasonable value of the services rendered by the doctor who attended Mrs. Candland's leg, but that the charge permitted the jury to "take into consideration any cost or expense," etc. We think the contention well founded and that the jury, in such respect, were misdirected.

For these errors must the judgment be reversed. What dis-

position should be made of the case? Were the original plain-
tiff alive, of course, the case should be remanded for a new
trial. Because of her death after judgment and because of
a reversal, does the cause abate? As to that we have not the
benefit of counsels' views.

As we view the matter, we think the cause does not survive.
It, however, was merged in the judgment which, had it
not been disturbed, could have been enforced. But    **11, 12**
when the judgment is gone the cause is gone. *Mason*
v. *U. P. Ry. Co.*, 7 Utah, 77, 24 Pac. 796, 1 C. J. pp. 168, 169,
171.

The order therefore is that the judgment be reversed, and
the case remanded, with directions to vacate the judgment
and to dismiss the action. Costs to the appellant.

FRICK and McCARTY, JJ., concur.