## MORRISON v. PERRY.

No. 6345.   Decided February 20, 1942.   (122 P. 2d 191.)

See 5 Am. Jur., 600; 42 C. J., Motor Vehicles, sec. 592.

*Thatcher & Young,* of Ogden, for plaintiff.

*Stewart* and *Hurd* and *E. B. Cannon,* all of Salt Lake City, for defendant.

MOFFAT, Chief Justice.

This action was brought by the personal representative of John K. Spiers, deceased, to recover damages for his death.

The case was tried to the court sitting with a jury, resulting in a verdict for plaintiff.

Defendant appeals; plaintiff cross-appeals. At the close of plaintiff's evidence, defendant interposed a motion for non-suit. This was denied. When both parties had rested, after all the evidence had been submitted, defendant moved the court for a directed verdict in favor of defendant. This motion was also denied. The matter went to the jury with the result indicated.

There is no substantial conflict in the evidence. The right of plaintiff to recover is based upon alleged negligence of the defendant. Upon that issue there is no conflict in the evidence. We are of the opinion there is no direct evidence of negligence, and no evidence from which negligence could be reasonably inferred on the part of the defendant.

In summary of the uncontradicted evidence, we find the following:

The accident occurred at the forks of the highway just southeast of the rocky point near the hot springs, not far northwest of Ogden City, Utah. The approach from the north, the right hand new or main highway, leads into Wall Avenue of Ogden City. The old road after rounding

the curve of the rocky point is the left hand road leading easterly from the point of division.

Defendant was approaching from the north, the point where the road divides, intending to take the new or right-hand road to him. He was traveling within the speed limit. There was not much traffic upon the highway, the time being about seven o'clock in the morning. The visibility was good.

Defendant was an automobile driver of about 20 years' experience and fifty-two years of age. He was keeping a lookout. There was nothing unusual to detract his attention.

Near where the road divides the main or new, or Wall Avenue highway makes a curve to the right. When the defendant neared the point of division of the highway, he observed a truck or automobile approaching from the south on the new highway. On account of the curve, when he first observed the approaching truck, he was unable to determine on which side of the road it was. As the truck driven by Mr. Spiers, the deceased, and defendant's car approached each other defendant observed the truck was on its wrong side or west side of the road, which was defendant's right-hand side. This was the situation presented as the two vehicles approached each other when the distance was about two hundred twenty-five feet between them and approaching each other, each at a speed of from 35 to 40 miles per hour.

The defendant, his wife and daughter-in-law were the only eye witnesses at the trial. Mr. Spiers, the driver of the truck, died about nineteen days after the accident.

The circumstantial and physical evidence tends to support the uncontradicted evidence of the eye witnesses. It is evident that the automobile turned to the left about the same time that the truck turned to the right. The vehicles collided at front ends at approximately right angles on the north side of the old highway. The tire marks of the truck were traceable in a direct line from the point of collision southerly to the gravel at the V point where the hard surfaced portions of the old and new highways inter-

sected. Beyond the gravel point there were no visible tire marks.

The tire marks of the automobile driven by defendant indicated that he turned to his left from the new highway to the point of collision.

The plaintiff claimed liability on four grounds: Excessive speed; inability to stop within range of vision; failure to keep a lookout; and that deceased was on the right side of the road and that without warning defendant suddenly swerved to the left directly toward decedent.

As heretofore indicated, the uncontradicted evidence is that Mr. Spiers was "cutting the curve" and was on defendant's side of the road when the vehicles were but 225 feet apart. Each party, by his pleadings, claimed the other was on the wrong side of the highway. On this issue all the evidence is against plaintiff.

Where the collision finally occurred each was on the north side of the old highway. Neither was intending to travel the old highway so something happened to divert each from an intended course. There is no presumption of negligence simply because an accident happened. In this case, negligence may not be presumed from the direction and distance of the tire marks of the respective vehicles as they approached the point of contact. The oral evidence of time, place, distances and circumstances were aids in interpreting the mute marks of the tires of the respective vehicles.

The evidence forces the conclusion that the driver of the truck created a dangerous emergency. In the emergency, it cannot be said the defendant acted other than as a reasonably prudent person ordinarily would have acted in the emergency. Defendant undertook to do what he could to avoid an accident.

In the case of *McPhee* v. *Lavin*, 183 Cal. 264, 191 P. 23, the following syllabus reflects the holding of the case upon facts arising out of one turning to the left to avoid an accident when an approaching vehicle was on the wrong side of the road:

"One suddenly confronted with an unexpected danger may use such means for avoiding the danger as would appeal to a person of ordinary prudence in a like situation, without being held to strict accountability as to whether the course chosen is the most judicious or not."

The case of *Kennedy* v. *Opdenweyer,* 11 La. App. 532, 121 So. 636, is similar to the instant case as to facts, a curved road, the crossing to the left and the witnesses. Upon the trial a judgment was had for plaintiff. On appeal it was reversed.

Aside from the undisputed proof, as the two vehicles approached the forks of the road the southbound car had its choice as to which of the forks of the road it would take. A left turn to take the left fork would give the car approaching from the right the right of way. Had the northbound car been on its proper side of the highway and the defendant had continued as he had intended to continue there would have been no collision. Even had there been a possible avenue of escape for defendant by taking to the shoulder of the road to his right still when two alternatives are presented to a traveler upon a highway as means of escape from a threatened collision with an approaching traveler, either of which might be fairly chosen by an ordinarily prudent intelligent person it is not negligence to take a choice of either. *Skene* v. *Graham,* 114 Me. 229, 95 A. 950.

Statutes designed for protection of person and property have been passed. Among them is the statute relating to curves and approaching a crest in the highway. The driver of a vehicle is by law required to drive to his right side of the center line of the highway when approaching the crest of a grade or upon a curve in the highway when a driver's view along the highway is obstructed within a distance of five hundred feet. Revised Statutes of Utah, 1933, Section 57-7-26.

The trial court should have granted defendant's motion for dismissal at the close of plaintiff's testimony, failing

in this the defendant's motion for a directed verdict should have been granted. The cause is remanded with directions to dismiss in accord with the views herein stated. It is not necessary to discuss the cross-appeal.

Judgment reversed. Costs to appellant.

LARSON, and PRATT, JJ., concur.

WOLFE, Justice (dissenting from the order).

I think under the decision of the majority of the court the order requiring the trial court to dismiss the case is correct. But because I cannot concur in the holding that there is no evidence to support the verdict I must dissent from the order requiring dismissal and vote for reversal but for the granting of a new trial.

While as a juror I might conclude that the evidence definitely preponderated in favor of the defendant, the evidence of Forbess, and I think perhaps also that of Taylor, Henderson and Olson interpreted in the light of the illustrative diagram, Plaintiff's Exhibit "A," is some evidence that Spiers was proceeding on his own side of the road. Taylor did not see the accident. It was his duty as deputy sheriff to make the examination and his testimony as to tire marks is evidence for the jury. If the direction of the marks of the tires of Spiers' car physically registered on the "V" dirt tongue protruding into the convergence of the two roads was such as to demonstrate that the testimony of Taylor, Forbess, Henderson, and Olson as to the location of Spiers' tire marks south of this "V" could not be a continuation, I might agree with the opinion. Where the evidence of the partial course of an automobile is made certain by markings on the earth or pavement other markings testified to as purporting to show the course of the automobile inconsistent therewith may be ignored. For instance, if it was certain that the tire marks of Spiers' car across the dirt tongue above mentioned were at such an angle as to make the continuation of the marks as testified to by Taylor

incompatible, the evidence of those witnesses might be ignored and the mark registered by the dirt tongue be itself a conclusive corroboration of the testimony of the eye witnesses riding in the Perry car. While the record together with the rough plats is somewhat difficult to follow because of the numerous blurred and overlapping markings and confused figures of reference, as near as I can tell, there is an apparent conflict of testimony on the course of the Spiers car while it was proceeding north on the Wall Avenue Highway. It is quite true that with the exception of the testimony of Mr. Forbess none of the witnesses could trace the tracks of the Spiers truck south of a point which would make its course inconsistent with a long bias from his wrong side over the "V" tongue up to the point of contact. But the testimony of Mr. Forbess seems inconsistent with such course. The witness Olson's testimony might be interpreted as evidence of continuing car marks on Spiers' own side of the road.

The defendant complains that the plaintiff unnecessarily injected into the case the fact that the defendant, was insured. In this case the main question to be resolved was as to whether defendant had negligently crossed plaintiff's path intending to go to Ogden over the old highway, or whether he, defendant, had seen or thought he saw Spiers coming toward him on Spiers' wrong side of the road and, in being confronted by an emergency or supposed emergency, had endeavored to avoid the Spiers car by going to his, defendant's left. The question thus posed would under the facts be difficult for the jury to solve. The deceased was old and well known in the community. It requires little familiarity with the ways of jurors or of human nature to be cognizant of the fact that on close cases and sometimes in those not so close—the feeling that defendant will not have to pay the judgment influences or paramountly prompts a verdict for plaintiff. On the other hand, the plaintiff has the right to know also that the triers of the fact are free from any bias in favor of insurance companies

or indeed of any tendency to lean backward because of their knowledge that other juries have decided in favor of defendants because they may have believed that insurance companies and not the defendant would be required to pay the judgment. The efforts to insure both sides a fair trial under these realizations have tried the ingenuity of the law. The question depends largely on the good faith of the attorneys and especially the attorney for the plaintiff. If he uses the occasion of examination of jurors on their voir dire to inject into the proceedings the knowledge that defendant was insured he exceeds the permissible limit of diligence in behalf of his client. He must realize, as jurors may not, that while his client may gain, the public, in the end loses. The more the insurance companies are required to pay the greater the premiums charged to the public. It follows, therefore, that insurers should be made to pay all just judgments which they have contracted to pay but not any which may not have been justly or fairly obtained. Space to say the aforegoing might be wasted were it not for the fact that these almost obvious truths are ofttimes lost sight of in the intensity of desire to obtain favorable verdicts.

How then are we to safeguard the rights of both the plaintiff and the public? In *Balle* v. *Smith,* 81 Utah 179, 17 P. 2d 224, suggestions were laid down. I think perhaps they could be supplemented.

Perhaps it would be well if every trial judge trying automobile accident cases would announce to every panel of jurors called that since some persons carried insurance and others did not he made it a practice to interrogate the veniremen en masse as to whether any of them owned stock in any insurance company or were in the business of soliciting for automobile liability, property or collision insurance or in the business of adjusting claims for liability, property loss or collision due to accident stating emphatically at the same time that he did not know whether the defendants did or did not carry such insurance and that he

was not concerned about that question nor should the jurors be concerned because the question of whether defendant should or should not respond for alleged negligence was completely independent of the fact of whether there was a contract of indemnification. In order to make this statement truthfully, the judge should not be informed as to whether there was insurance and he should make it part of a definite policy in all automobile accident cases. In lieu of this procedure the attorney for plaintiff or defendant might inform the judge that there was insurance, and all examination for the purpose of exposing bias because of possible insurance connection should be conducted by the judge.

If it develops that any of the veniremen are in the business of soliciting automobile insurance contracts or selling or adjusting insurance claims, such veniremen could then be further asked for which company and whether such fact would influence him in any way in reaching a verdict. When the name of the company was disclosed counsel could signify to the judge without notifying the jury whether such company was the insurance carrier for defendant. If not, and it developed that his insurance connections would not prevent him from fairly trying the case, the examination in respect to insurance should there be dropped' unless there were special circumstances which might require further probing in which case counsel should suggest such questions to the judge quietly outside of the hearing of the veniremen, the judge then to exercise his discretion as to whether and how he desires to further interrogate in that regard. Whether the above policy is adopted by the trial judge, at all events he should himself ask all questions that might touch on the question of insurance. And the interrogation should be first to the panel as a whole. The questions should be so put as to mark them as part of a general inquiry regardless of whether there was insurance in the particular case and should always be attended with a clear explanation of the purpose and an equally clear admonition

of the duty of the jury to render its verdict regardless of whether or not defendant may have happened to carry insurance.

None of the above procedure was followed in this case. It seems fairly clear from the affidavits of the jurors that the fact of defendants having insurance was mentioned in the jury room and might well have influenced the verdict, especially in view of the fact that at first the jury stood five for the defendant and three for the plaintiff. Questions relating to insurance were put to the veniremen separately with special attention to venireman Fowles whom plaintiff's attorney knew to be in the insurance business. As to the examination of Mr. Fowles, the attorney for plaintiff definitely knew he was in the casualty insurance business and could hardly be expected to ignore that knowledge. I see no objection to it outside of a definite mention of the Farmer's Automobile Insurance Exchange which was the specific company which carried the defendant's insurance. The quest could have been satisfied by asking Fowles which casualty insurance companies his agency represented. Furthermore, all of the other jurors with the possible exception of Mr. Boyle could have been interrogated as a group thus not boring in with the insurance phase to a point where the emphasis given to the inquiry was incommensurate with all permissible returns to plaintiff.

The court refused to declare a mistrial because of the answer of witness Penrose stating,

"I understand from this other man here that he [Williams] was an attorney with an insurance outfit. That is what he told me he was. He didn't tell me he was an attorney."

While it appears that the purpose of plaintiff's attorney may have been to uncover the fact that Williams was acting as an adjuster for the insurance company when he talked to Penrose before the trial the persistance was perhaps somewhat invited but not justified by the desire of defendant's attorney to show that Williams was Perry's attorney.

Plaintiff's counsel had a right, of course, on cross-examination to find out from Penrose whether Williams told him, Penrose, who he was and who he purported to represent in order to show how Penrose became a witness and whether his testimony would have been influenced by others who talked with him. Under any insurance contract when the insurer has the right to defend an action an attorney acting for the insurer may be considered as far as the trial is concerned as representing the defendant whether or not he appears on the record as attorney for the defendant. The efforts of counsel for defendant to show that Williams acted as attorney for Perry when he contacted Penrose was permissible especially after counsel for the plaintiff had attempted to show by him (Penrose) who Williams was employed by. It certainly could not have added or detracted one iota from the value, or credibility of the testimony of Penrose for the jury to know whether Penrose knew Williams was attorney for the defendant directly or an attorney generally employed by the Insurance Company. The plain purpose was again to bring before the jury the fact that defendant had indemnity. A verdict based on the fact that there is indemnity rather than the real question of negligence as said before, may be an unfair verdict. It may amount to nothing short of taking from the pocket of one party money to pay a benefit to an injured person or his heirs just because of an accident, regardless of the defendant's legal liability. While in this instance it might have been wisdom for defendant's counsel to have excused Penrose after plaintiff's counsel had first concluded his cross-examination he cannot have visited upon his as a penalty for not doing so the elaborate consequences which followed, especially since an attorney need not be altogether guided in the wisdom of his policy by the thought that he must not give opposing counsel opportunity to do what opposing counsel in justice should not do.

Everything considered, I think that this case furnishes a good illustration of overzealousness of plaintiff's counsel

to push before the jury the fact that defendant carried insurance and an alertness for openings to intrude that fact, a matter which should be discouraged by the review courts.

Defendant assigns error as to certain instructions given by the court. If this case is to be retried it is the duty of this court under the statutes to decide those questions of law presented which will serve the trial court as a guidance in the second trial. It would serve no good purpose for a dissenting or concurring opinion to conclude as to rulings assigned as errors unless such conclusions would form an authoritative guide. Having given grounds for my opinion that there was error sufficient to require a reversal, I refrain therefore from consideration of other rulings assigned as error. Likewise, I refrain from considering the interesting questions raised by plaintiff's cross appeal from the judgment of the court dismissing the second cause of action seeking damages for injury to plaintiff's car—doctors, nurses and hospital expenses, towage, etc., that is, as to whether they survive the death of deceased under Sec. 102-11-6, Revised Statutes of Utah 1933 (especially as to injuries to the car) or whether if not they can be included as elements under Sec. 104-3-11, R. S. U. 1933. Under a holding that there was no evidence to support the verdict of negligence, such questions become moot. Any treatment I might give them would lengthen this already long opinion to no authoritative purpose.

McDONOUGH, Justice: I concur in opinion of WOLFE, J.