## MORRISON v. PERRY.

No. 6345. Decided August 17, 1943. (140 P. 2d 772.)

154

See 25 C. J. S., Death, sec. 87. Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in a personal-injury or death action carries liability insurance, notes, 56 A. L. R. 1418, 74 A. L. R. 849. See also, 5 Am. Jur., 872.

For former opinion, see 104 Utah ——, 122 P. 2d 191.

*Thatcher & Young,* of Ogden, for plaintiff.

*Edwin B. Cannon* and *Joseph D. Hurd,* both of Salt Lake City, for defendant.

LEVERICH, District Judge.

On rehearing. The original opinion is reported in 122 P. 2d 191. This action was brought by the personal representative of John K. Spiers, deceased, for the benefit of his heirs, to recover damages for his death. The parties will be designated as they appeared in the court below.

Plaintiff's complaint contains two causes of action: First, to recover damages sustained by the heirs by reason of the death of Spiers, and second, to recover damages for obligations incurred by deceased between the time of the accident and his death, such as hospital, nursing, and doctor bills, cost of towing his wrecked car and damage to the car. To the second cause of action the court sustained a general demurrer, and plaintiff cross-appeals. Issues were joined on the first cause of action and a trial by jury resulted in a verdict and judgment for plaintiff, from which defendant appeals.

The accident occurred near the hot springs northwest of Ogden City, Utah, at a point where the new highway

connects with the old Ogden highway. The old highway is straight for some distance on each side of the point where the new highway connects with it. In approaching from the north point where the roads divide, the old road continues in a straight line in a southeasterly direction, while the new road takes off and goes in a southerly direction. The fork of the roads forms a V shape which is filled with gravel and is the shoulder of the two roads as they come together. The old highway is cement construction and the new is oiled gravel. Both roads have gravel shoulders on each side. Both highways lead to Ogden. The new road is referred to in the evidence as the main highway.

The defendant and his wife and daughter-in-law were approaching from the north while the truck driven by Mr. Spiers, the deceased, was approaching from the south on the main highway.

Defendant assigns 62 errors which may be grouped as follows: 1. Sufficiency of evidence as to defendant's negligence. 2. Contributory negligence of deceased as a matter of law. 3. Misconduct of counsel. 4. Admission and rejection of evidence. 5. Instructions. 6. Misconduct of jurors.

There were three eye-witnesses to the accident, the defendant, his wife and daughter-in-law. Mrs. Perry was in the front seat of the car next to the driver, while defendant's daughter-in-law sat in the rear seat behind the driver. These witnesses testified in substance that they were driving from their home in Deweyville, which is on the highway north of Ogden, to the Dee Hospital in Ogden. They approached the scene of the accident about 7:00 o'clock a. m.; it was light and the visibility good; defendant was proceeding at 35 to 40 miles per hour, and as his car approached the point where the main and old highways separate, they saw deceased's car approaching from the south on the main highway; they could not tell which side of the road he was on until they were within 225 feet of each other, at which time they noticed deceased was on the wrong side of the

highway, on the inside of the curve, headed toward the right side of defendant's automobile; that defendant immediately swung his car to the left and applied his brakes; that at the same instant deceased swung his car to his right; defendant's car had almost come to a stop when the collision occurred near the edge of the hard surface of the old highway on defendant's left hand side and near the point of divergence of the highways; both cars were traveling at about the same rate of speed. These witnesses testified that they intended to take the new or main highway into Ogden and consequently intended to turn to their right at the point where the new highway enters the old.

The plaintiff produced witnesses who testified with respect to tire-marks, position of the cars as they come to rest and damage to the cars. From the evidence and the inferences deducible therefrom the jury might conclude that defendant was negligent and that deceased was free from contributory negligence.

Defendant in his brief says that that it is true that when a collision occurs on the defendant's wrong side of the road a presumption of negligence arises in the absence of evidence explaining why his car was on the wrong side of the road. Defendant then vigorously argues that the moment an explanation is offered the presumption ceases and does not longer exist. This is true, but the evidence upon which the presumption was based remains in the case and is to be considered by the jury, unless there is no conflict between such evidence and the explanatory evidence. See *State* v. *Green*, 78 Utah 580, 6 P. 2d 177; *Buckley* v. *Francis*, 78 Utah 606, 6 P. 2d 188; 9 Wigmore on Evidence (3rd Ed.) Sec. 2491. Defendant cites *Saltas* v. *Affleck*, 99 Utah 65, 102 P. 2d 493, 495. In that case the court said:

"The evidence offered in rebuttal of the presumption of the agency of the driver from proof of ownership may be so uncontradicted and conclusive as to entitle the court to say as a matter of law that the presumption has been rebutted."

Here we do not believe such evidence to be conclusive.

Defendant contends there was not sufficient evidence to establish that deceased died as a result of the accident. We do not agree with this contention. There was evidence from which the jury could infer that the death resulted from the accident.

The trial court rejected an offer by defendant to prove a statement made by a son of deceased who arrived upon the scene shortly after the happening of the accident. The statement was to the effect that the witness "knew this was going to happen. We have tried to keep him off the truck. He is too old to be driving; he has no business driving a car." We need cite no authority. Such evidence is clearly inadmissible.

Over defendant's objection the court permitted a person, not an eyewitness, to give his opinion as to whether or not the brakes had been applied on defendant's car and also his opinion that the deceased's car when struck was picked up and came to rest a car-width from its original position. Another such witness was permitted to express and to demonstrate how the two cars came together. The opinions of both witnesses were based upon what they observed at the scene of the accident. The witnesses reproduced to the jury what they observed and the jury thus being equally as well informed as the witnesses should draw their own conclusions. Wigmore in speaking of this says at page 22, Section 1924 of Vol. 7, Wigmore on Evidence, 3rd Ed.:

"Such a witness' (lay witness) inferences are inadmissible when the jury can be put into a position of equal vantage for drawing them —in other words, when by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion."

The court erred in overruling the objections to such testimony.

The trial court instructed the jury on all of the alleged grounds of negligence set forth in plaintiff's complaint. One of the grounds was that defendant drove ■ his car "without having it under immediate control, so that he could not stop it within the range of his vision." The court should not have submitted this issue to the jury for there was no evidence to support it and it is not applicable in this case.

In Instructions Nos. 15 and 21, the court told the jury. that it was the duty of each driver to keep a *constant* lookout and that if either failed to do so he would be negligent. The law requires a motorist to main- tain a reasonably careful lookout so as to avoid a collision with persons or objects on the highway. 5 Am. Jur. 599, Sec. 167; *Cunnien* v. *Superior Iron Works Co., et al.,* 175 Wis. 172, 184 N. W. 767, 18 A. L. R. 667; *Boccalero* v. *Wadleigh,* 113 Cal. App. 376, 298 P. 526. What. constitutes a reasonably careful lookout varies with the varying circumstances, and it is for the jury to determine whether or not a person maintained such a lookout under all of the facts as shown by the evidence. It may well be that under certain circumstances a "constant" lookout would be required and any lookout less than that would constitute a lack of due care. From the evidence in this. case it cannot be said that reasonable minds would reach only one conclusion, that is, that the exercise of reasonable care under the circumstances would require a "constant" lookout. The court erred in instructing the jury that a "constant" lookout would be required.

In Instruction No. 2, the court propounds the following. questions:

1. Did the defendant, at the time of or immediately preceding this accident, drive his automobile at a high, dangerous and unlawful rate of speed or at a rate of speed faster than was reasonable and prudent, having due regard to the surface and width of the highway and traffic thereon?

2. Did the defendant, at the time of or immediately pre-

ceding this accident, drive his car without having it under immediate control, so that he could not stop it within the range of his vision?

3. Did the defendant at the time of or immediately preceding this accident, fail to keep a careful lookout ahead for other cars on the highway?

4. Did the defendant, at the time of or immediately preceding this accident, while driving his car upon the highway, suddenly and without warning swerve his car sharply to the left directly in the path of and against the truck driven by Mr. Spiers?

5. Did the defendant, at the time of or immediately preceding this accident, drive his car on the wrong, or left-hand, side of the highway?

Following this the instruction goes on:

"If you answer all of these questions in the negative then you should bring a verdict in favor of the defendant. But if you answer any or all of these questions in the affirmative then you must determine the following question: Was the defendant, in so driving his automobile, guilty of negligence?"

The following questions were then asked with respect to the alleged grounds of contributory negligence:

1. Did the deceased, John K. Spiers, at the time of or immediately preceding this accident, drive his truck on the wrong side of the highway?

2. Did the deceased, at the time of or immediately preceding this accident, drive his truck at a rate of speed faster than was reasonable and prudent having due regard to the surface and width of the highway and conditions then existing and the traffic thereon?

3. Did the deceased, at the time of or immediately preceding this accident, fail to have his truck under immediate control?

4. Did the deceased, at the time of or immediately preceding this accident, while driving on the wrong side of

the highway, suddenly and without warning turn his auto-. mobile into and against the car driven by the defendant?

The court then states:

"If your answer to any of these questions is in the affirmative, then you must determine the following question: Was the deceased, in so driving his truck, guilty of negligence?"

In other instructions the court stated in substance that a person who drove an automobile in the manner described in the propounded questions was negligent, and in Instruction No. 13, instructed with respect to an emergency allegedly created by the deceased. The jury was told that if a person drove his car in a certain manner he *was* negligent, and also that if he drove his car in that manner they were then to determine whether or not he was negligent. Thus the jury was permitted to decide that acts of negligence as a matter of law were not negligent. These instructions were conflicting and the giving of such instructions constitutes error. *Sorenson* v. *Bell*, 51 Utah 262, 170 P. 72.

The court in question number 5 of Instruction No. 2, concerning defendant's negligence failed to take into consideration defendant's theory of the case. Defendant alleged and offered evidence to prove that deceased created an emergency by operating his truck on the wrong side of the road. The form of the instruction was such as to definitely suggest that driving on the left-hand side of the highway by defendant was in fact negligence, and it was not pointed out that his so doing, would not constitute negligence if deceased created a hazard and that plaintiff could not take advantage of deceased's wrong and predicate liability on defendant's act in failing to exercise perfect judgment to avoid an emergency.

Defendant's theory, which was supported by evidence, was that deceased, by driving on his left-hand side of the

highway, and his failure to turn to his right side in time to avoid creating an emergency, did create an emergency which confronted defendant through no fault of his. The court failed to properly separate the theories of the parties, but instead gave general instructions treating the rights and duties of each driver as being mutual, without regard to defendant's theory as to deceased's negligence in first being on his wrong side of the highway. Defendant is entitled to have his case submitted to the jury on any theory justified by proper evidence. *Morgan* v. *Bingham Stage Line Co.*, 75 Utah 87, 283 P. 160; *Hartley* v. *Salt Lake City*, 41 Utah 121, 124 P. 522; *Pratt* v. *Utah Light & Traction Co.*, 57 Utah 7, 169 P. 868; *Smith* v. *Lenzi*, 74 Utah 362, 279 P. 893; *Martineau* v. *Hanson*, 47 Utah 549, 155 P. 432.

Each party is entitled to have his theory of the case presented in such a way as to aid the jury and not confuse it. In *Toone* v. *J. P. O'Neill Construction Company*, 40 Utah 265, 121 P. 10, 16, the court suggests the better practice of presenting the parties' theories of the case to the jury:

"One way the court might have followed in charging the jury would have been to charge them in separate instructions, first, in accordance with respondent's evidence; and, second, in accordance with appellant's evidence which related to the proposition covered by the instruction in question, and in each instruction have directed the jury to return a verdict in accordance with their findings upon that question."

The court should have given some of the defendant's requested instructions pertaining to his theory of the case. The defendant submitted 49 requests for instructions, some of which were admittedly repetitious. Such a method of submitting requests for instructions does not aid the trial court in preparing the charge to the jury. We call attention to the fact that defendant in his brief took time and effort to point out errors in instructions to which he took no exceptions.

Defendant assigns as error misconduct of plaintiff's counsel in interrogating the jury regarding the question of insurance and by injecting into the case the fact that defendant was insured by means of questioning a witness and in argument to the jury.

The trial court permitted plaintiff's counsel to examine the jurors on voir dire. Juror Fowles stated in answer to questions put by counsel, that he was in the insurance business; that he did not own any stock in any insurance company, "except the agency." That agency is for a group of insurance companies. Counsel then asked these questions and received the following answers:

"Q. Do you happen to know the Farmers' Automobile Insurance Exchange? A. I have heard of them.

"Q. You don't represent that insurance company? A. No, sir.

"Q. Do you know who does represent that company in Ogden? A. Barker Fellows used to.

"Q. I didn't ask you, but I just asked you if you knew? A. No, sir, not at the present time.

"Q. So you don't know whether you are friendly with the agent of that company or not? A. No, sir."

This juror was then asked if the companies he represented had any pending litigation in the courts. Another juror was asked whether he had ever been engaged in "adjusting claims." One juror, a printer, was asked, "Have you ever been a solicitor for insurance companies?" And after the juror answered "No," "or an adjuster of claims?" After a second negative answer, "Have you ever been in any insurance business?" And then, "Have you ever owned any stock in an insurance company?" Another juror was asked if he had ever been an adjuster for an insurance company.

Such examination was misconduct on the part of plaintiff's counsel and is reversible error. The method of examining jurors on the question of insurance was set forth in *Balle* v. *Smith*, 81 Utah 179, 17 P. 2d 224. In *Saltas* v. *Affleck et al.*, 99 Utah 381, 105 P. 2d 176, 179, this court said:

"We are of the opinion it was reversible error for counsel to interrogate each juror as to whether he were a stockholder in a specifically named insurance company or generally so as to indicate that an insurance company was the probable real party in interest, a matter foreign to the issues in the case, when no preliminary questions had been asked."

See, also, *Alexiou* v. *Nockas,* 171 Wash. 369, 17 P. 2d 911; *Rice* v. *Warner Hotel Co.,* 187 Ill. App. 317; *Berry* v. *Park,* 185 Okl. 118, 90 P. 2d 425; *Miller* v. *Kooker,* 208 Iowa 687, 224 N. W. 46; *Purcell* v. *Degenhardt,* 202 Ill. App. 611; *Bergendahl* v. *Rabeler,* 131 Neb. 538, 268 N. W. 459; *Avery* v. *Collins,* 171 Miss. 636, 157 So. 695.

On direct examination, a witness called by defendant, testified concerning deceased's health, and also that the deceased had a bad reputation as a driver. With respect to the testimony concerning the reputation of deceased as a driver there is no cross-assignment of error; therefore we will not discuss it. On cross-examination of this witness, it was brought out that he had talked to Mr. Williams, an attorney, in Brigham City. The witness then stated that at the time of the conversation he did not know by whom Williams was employed, but that he did know at the time of testifying. On redirect examination, it was shown that he afterwards had learned that Williams was one of defendant's attorneys. On recross-examination plaintiff's counsel asked and the witness answered as follows:

"Q. Did you say Mr. Williams was an attorney of Mr. Perry? A. Well, he called to see me on that occasion.

"Q. Did he tell you he was Mr. Perry's attorney? A. No, he didn't say.

"Q. Who told you that he was his attorney? A. I didn't know that until this morning he was his attorney.

"Q. Who told you that this morning? A. I understood he was.

"Q. What is it? A. I understood from this other man here that he was an attorney with an insurance outfit. That is what he told me he was. He didn't tell me he was an attorney."

Counsel then closed the examination.

It is apparent the only purpose for such persistent questioning was to tell the jury that defendant was insured.

From the record it appears that plaintiff's counsel knew that Mr. Williams was employed by the insurance company and consequently he could anticipate the witness' answer. We need not cite authority for the proposition that the question of indemnity insurance in a case such as this is irrelevant. It is also a well-known fact that jurys are influenced in determining liability and the amount of recovery by the fact that an insurance company would pay the damages. By this we do not say that in some cases a reference to insurance is not proper. See *Reid et al.* v. *Owens et al.*, 98 Utah 50, 93 P. 2d 680, 685, 126 A. L. R. 55. Mr. Justice McDonough writing the opinion in that case, says:

"If questions are propounded to a witness for the obvious purpose of revealing such irrelevant fact [that defendant was insured] to the jury a mistrial may properly be declared or a new trial granted. * * * But here the statement was so interwoven with that relating to the father's knowledge as to definitely weight the latter. Fraught with prejudice though this be, it constituted an admission by defendant which, if believed, would make a prima facie case of liability against him."

Such questioning of the witness by plaintiff's counsel was misconduct and constitutes reversible error. *Consolidated Motors Inc.*, v. *Ketcham*, 48 Ariz. 295, 66 P. 2d 246; *Poland* v. *Dunbar*, 130 Me. 447, 157 A. 381; *Simpson* v. *Foundation Company*, 201 N. Y. 479, 95 N. E. 10, Ann. Cas. 1912B, 321; *Fleming* v. *Hartrick*, 105 W. Va. 135, 141 S. E. 628; *Lavigne* v. *Ballantyne*, R. I., 17 A. 2d 845; *Levy* v. *J. L. Mott Iron Works*, 143 App. Div. 7, 127 N. Y. S. 506; *Hankins* v. *Hall*, 176 Okl. 79, 54 P. 2d 609; *Bratten* v. *White*, 181 Okl. 543, 75 P. 2d 474; *Manigold* v. *Black River Traction Company*, 81 App. Div. 381, 80 N. Y. S. 861.

Defendant assigns as error misconduct of the jury. In support of his motion for new trial defendant filed affidavits from four jurors to the effect that "one of the jurors called attention to the fact that there was insurance in the case." The affidavits should have

been stricken by the court. In *Hepworth* v. *Covey Bros. Amusement Co.*, 97 Utah 205, 91 P. 2d 507, 510, this court made the following statement:

"The weight of authority is that a verdict may not be impeached by affidavits of the jurors as to what was said or done in the jury room except as the statute permits such affidavits. *People* v. *Ritchie*, 12 Utah 180, 42 P. 209; *Black* v. *Rocky Mountain Bell Telephone Co.*, 26 Utah 451, 73 P. 514."

After quoting 104-40-2, R. S. U. 1933, the court goes on,

"The section of the statutes above quoted limits the use of such affidavits to the question of a chance verdict."

Counsel for defendant in his reply brief attempts to say that the affidavits were not offered in support of the motion for new trial under the subdivision relating to misconduct of the jury, but they were offered under 104-40-2, sub. (7), to show "Error in law occurring at the trial, and excepted to by the party making the application." However, defendant's assignment of error number 62 is as follows:

"The court erred in denying defendant's motion for a new trial, when it appeared without dispute that the jurors were guilty of prejudicial misconduct in discussing in the jury room the fact that 'Mr. Stewart was representing an insurance company and the defendant, Mr. Perry, would not have to pay the judgment, as it would be paid by the insurance company.'"

He also devotes a portion of his brief in discussing authorities from other jurisdictions under the subdivision entitled "Misconduct of the jurors."

Plaintiff has interposed three cross-assignments of error, all going to the question of damages. The following instruction was requested by plaintiff:

"*You should also include*, the amount paid out by the heirs, or any one or either of them, for funeral expenses, if you believe that said heirs, or any one or either of them, obligated themselves, or himself, to pay the same and that the charge was reasonable." (Italics added.)

The court refused this request and gave in lieu thereof, the identical instructions except the italicized words were omitted and the words: "may also consider" were added. After verdict plaintiff moved for a judgment notwithsanding the verdict on the ground that it was undisputed that certain of the heirs paid $819.40 funeral expenses and that this sum was reasonable. The court properly denied the motion, for a motion for judgment notwithstanding the verdict is not recognized in this jurisdiction as proper. *Kirk* v. *Salt Lake City*, 32 Utah 143, 89 P. 458, 12 L. R. A., N. S., 1021; *Yerrick* v. *District Court of Salt Lake County*, 48 Utah 619, 161 P. 55.

The verdict submitted by the court divided the damages into general and special. The jury allowed $4,500 for general damages and nothing for special damages.

The damages recoverable in an action such as this 23, 24 are set forth in 104-3-11, R. S. U. 1933, as follows:

"In every action under this and the next preceding section such damages may be given as under all the circumstances of the case may be just."

This is nothing more nor less than the law seeks in every case of actual or compensatory damages. Compensation for loss sustained. Under our wrongful death statute, 104-3-11, R. S. U. 1933, the law does not seek to punish the wrongdoer, but simply to compensate the heirs for the loss sustained. *Evans* v. *Oregon Short Line Railroad Co.*, 37 Utah 431, 108 P. 638, Ann. Cas. 1912C, 259; 16 Am. Jur. p. 124, Sec. 185. It is undisputed in the evidence that deceased's widow paid $819.40 for funeral services and that this amount was reasonable. There is, however, no evidence that the estate was insolvent, nor was there evidence to show whether or not the widow made a claim against the estate for reimbursement, or whether or not she was in fact reimbursed from the estate. If the widow was reimbursed from the estate was she damaged in this particuar? The answer is obviously no, if we keep in mind that the estate

is separate and distinct from the plaintiff or the statutory beneficiaries in this action. The estate may be damaged to that extent but the estate is not a party under our death statute. *Mason* v. *Union Pacific Railway Co.*, 7 Utah 77, 24 P. 796.

It is elementary that a party may not enhance ██ damages. Every party must

"exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover." 15 Am. Jur., p. 420, Sec. 27.

An heir who has paid funeral expenses for the death of an adult should not be permitted to enhance the damages by reason of his failure to seek reimbursement from the estate. The heir in such a case is not legally obligated to pay funeral expenses, but the estate has a primary legal obligation.

We conclude that before a plaintiff may recover funeral expenses in an action under 104-3-11, R. S. U. 1933, he must show that the estate is insolvent and unable to pay such funeral expense, and that the plaintiff or ██ one of the heirs has paid or that he has entered into a legally enforcible obligation to pay the funeral expenses.

We have examined cases from other jurisdictions that have statutes similar to ours but we do not agree with the conclusions reached. Some jurisdictions which permit the recovery of such expenses have statutes which specifically provide that plaintiff may recover funeral expenses. If such recovery ought to be permitted then it should be accomplished by legislation.

The trial court did not err in refusing plaintiff's requested instructions; however, it should not have submitted the question of funeral expenses to the jury ██ because they are not recoverable in this sort of an action except under the limited circumstances set out.

Plaintiff has cross-appealed and assigns as error the judgment of the trial court in dismissing the second cause

of action by reason of having sustained a general demurrer thereto. The second cause of action sets forth the death of John K. Spiers which resulted by reason of the negligence of the defendant, the appointment and qualification of plaintiff as executrix of the estate, and alleges that by reason of the negligence of defendant, deceased was confined to a hospital and incurred the following obligations: nursing fees, doctor bills, x-rays, oral surgery, ambulance service, and hospital fees, totalling $786.45. That deceased's truck was a total loss amounting to $500 and also that it was necessary to employ a wrecker to haul the truck to Ogden, which amounted to $20. That all of these claims, except $500 for the truck, were presented to the estate and were approved by plaintiff as executrix. It is then alleged that all of these claims and damages were incurred by or sustained by deceased, during his lifetime, and survived his death. To this alleged cause of action a general demurrer was interposed. There is no question presented pertaining to misjoinder, the only question for us to determine is whether the estate may recover for the items set forth. Plaintiff advances two theories to support his contention, first, is 104-3-11, R. S. U. 1933 (wrongful death statute) a survival statute or does it create a new cause of action in the heirs; second, that the action may be maintained by reason of 104-3-19, R. S. U. 1933.

This court in the case of *Mason* v. *Union Pacific Ry. Co.*, 7 Utah 77, 24 P. 796, held that the death statute, 104-3-11 of the R. S. U. 1933, was not a survival statute but that it created a new cause of action in the heirs. The Mason Case, supra, has since been approved in *Halling* v. *Industrial Commission of Utah, et al.*, 71 Utah 112, 263 P. 78. This disposes of plaintiff's first theory.

The pertinent part of 104-3-19, R. S. U. 1933, is as follows:

"An action or proceeding does not abate by the death or any disability of a party, * * * if the cause of action or proceeding survives or continues. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest."

It is evident that this section is not a survival statute. At common law the death of a party abated the action and those actions that survived could again be commenced by or against the representative of the estate. The law did not provide for a substitution of parties in the event of death. 104-3-19, R. S. U. 1933, has no effect upon survivability, it merely operates upon the procedural question. This is pointed out in *Mason* v. *Union Pacific Ry. Co.*, supra, as follows:

"While this law (Sec. 3187, 2 Comp. Laws of Utah 1888) makes it the duty of the court to continue actions that survive in the name of the representative of the deceased party, it does not indicate those that do survive."

This section pertains to actions or proceedings which are pending at the time of death and has no reference whatever to an action commenced after death of a party.

Plaintiff has referred us to no other section of the statutes. However, the defendant has pointed out 102-11-5 and 102-11-6, R. S. U. 1933. 102-11-5 is as follows:

"Actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to determine any adverse claim thereon, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates."

102-11-6 reads as follows:

"Executors and administrators may maintain actions against any person who has wasted, destroyed, taken or carried away, or converted to his own use, the goods of their testators or intestate in his lifetime. They may also maintain actions for trespass committed on real estate of the decedent in his lifetime."

102-11-7 is the same as the last quoted section except that a person may maintain the actions *against* the executor or administrator of a deceased person.

None of these sections permit the survival of a cause of action for personal injuries or for damages which result from the personal injuries.

This court has held that an action for personal injuries and doctor bills does not survive in the case of *Candland* v. *Mellen*, 46 Utah 519, 151 P. 341, 344. In that case plaintiff had secured a judgment for personal injuries and doctor bills. Plaintiff died prior to perfecting the appeal. The Supreme Court in reversing the judgment disposed of the case by saying:

"As we view the matter, we think the cause does not survive. It, however, was merged in the judgment which, had it not been disturbed, could have been enforced. But when the judgment is gone, the cause is gone."

The lower court was directed to vacate the judgment and to dismiss the action. See also *Gerberich* v. *Southern California Edison Co.*, 26 Cal. App. 2d. 471, 79 P. 2d 783.

An action for personal injuries is personal to the party suffering such injuries, and the same is true of such items of damage which directly result from the injuries, such as doctor bills, nursing, x-rays, hospital fees, ambulance service and oral surgery. Such actions do **not survive.**

The estate also claimed damages for towing the automobile and for the destruction of the automobile. 102-11-6, R. S. U. 1933, quoted above, permits recovery by the estate from any person who has destroyed personal property of the deceased in his lifetime.

In the case of *Boyd* v. *Sibold et al.*, 7 Wash. 2d 279, 109 P. 2d 535, 540, decided by the Supreme Court of Washington, the action was one for the recovery of doctor, hospital bills and damages to an automobile. Plaintiff died and the executrix was substituted. The court denied recovery of the doctor and hospital bills but permitted the estate to recover damages to the automobile, and in doing so, said:

"We think it also quite significant that the statute last above mentioned has been relied upon in just two cases. The first of these cases was *Barnum* v. *Jackson*, 165 Wash. 347, 5 P. 2d 497, wherein we held recovery for damages to an automobile would lie against the administrator of the estate of a wrongdoer."

The opinion is very largely based upon the interpretation given to a similar statute of California. Referring to the statute of that state, 1 California Jurisprudence, p. 73, states:

"It was the intention of the legislature in adopting the latter provision to modify the well-known common-law rule to the extent that where a deceased person had in his lifetime wrongfully destroyed personal property of another to his damage, such person should have a right of action against the personal representatives of such wrongdoer for the recovery of damages sustained by reason of the wrongful act, and it is immaterial that the deceased has not benefited by the act."

The Washington statute is similar to our 102-11-6, R. S. U. 1933.

It is sometimes said that at common law tort actions die with the person. This was true only in a very limited sense, for only those tort actions died which were personal, such as personal injury. However, a tort action to recover damages to personal property survived at the common law. As early as 1330 a statute was passed giving the right to the executor to bring such an action. See 3 Street, Foundations of Legal Liability, p. 69. This early statute became a part of the common law in the United States. 1 Am. Jur. p. 73, Sec. 88.

We conclude that an action for the recovery of damages for the destruction of personal property survives and the representative may recover for the benefit of the estate. The towing charge is a part of the damage growing out of the destruction of the automobile, therefore this too is recoverable. The court erred in sustaining the general demurrer.

The judgment of the lower court is reversed and the case is remanded to the District Court for a new trial in conformity with this opinion. Costs to appellant.

WOLFE, C. J., and McDONOUGH, J., concur.

LARSON, Justice.

I concur. I have grave doubt that there is sufficient evidence to take the case to the jury, but must resolve that doubt in favor of a new trial.

MOFFAT, Justice (concurring in the result).

I concur in the result. I am of the opinion the deceased was contributorily negligent as a matter of law, or the collision was a matter of accident. The cars were neither of them in a position to claim a right of way as against general traffic, but defendant, in so far as his relation to deceased is concerned, was out of the course of deceased's line of travel. The mere fact of defendant's being on the left side of the old highway and beyond the point of intersection, even assuming deceased was on the right side of the highway he was traveling as he approached the intersection from the south, does not change the fact that had deceased held his course, no collision would have occurred.

WADE, J., having disqualified himself, did not participate herein.